HUBBELL, ROTH & CLARK, INC v JAY DEE CONTRACTORS, INC

Docket No. 225841. Submitted November 14, 2001, at Lansing. Decided November 30, 2001. Approved for publication January 18, 2001, at 9:15 A.M.

Hubbell, Roth & Clark, Inc. (HRC), and Soil & Material Engineers, Inc. (SME), brought a third-party action in the Ingham Circuit Court against Jay Dee Contractors, Inc. (JDC), seeking indemnification for any judgment that might be entered against HRC and SME in the personal injury action that had been brought by Patrick and Melanie Martin and James and Marcia Sullivan against the city of East Lansing, HRC, and SME. In the underlying action, it was alleged that the plaintiffs had suffered damages as a result of the encountering of hazardous contamination during the course of the performance of a construction contract that had been entered into by the city and JDC. HRC and SME alleged that JDC was obligated to indemnify them pursuant to subsection 51D of the construction contract that JDC has signed with the city, which provides that JDC, as the contractor, agreed to indemnify the city, its engineer, and any consultants for all claims arising out of the performance of the construction contract. JDC argued that subsection 50A of the contract with the city, which provides that the city "shall be responsible" under certain conditions for any hazardous substance uncovered or revealed on a construction site nullifies the indemnity provision of subsection 51D. JDC argued, in the alternative, that the two provisions of the contract conflict to such an extent that they create an ambiguity that must be resolved by a jury. The court, Michael G. Harrison, J., granted summary disposition for HRC and SME with respect to the third-party indemnity action, ruling that the contract language clearly required JDC to indemnify HRC and SME. JDC appealed.

The Court of Appeals held:

1. Subsection 51D of the contract clearly and unambiguously requires JDC to indemnify both HRC, the city's engineer on the construction project in question, and SME, a consultant on that project, with respect to any damages awarded in the plaintiffs' personal injury action.

2. Subsection 50A of the contract provides that the city "shall be responsible" for any hazardous substance uncovered or revealed on

a construction site, but only if the hazardous substance was not shown or indicated in drawings, specifications, or contract documents; the city did not otherwise give notice to the contractor of the possible presence of the hazardous substance; the hazardous substance was not discovered by the contractor, if the contractor chose to perform a reasonable and competent inspection and investigation of the site; and the hazardous substance presented a danger to persons at the work site. The remaining three subsections of § 50 specify the circumstances under which the contractor may stop working on the project if previously undisclosed hazardous substances are discovered and the circumstances that may result in an adjustment of the contract price. There is nothing in the language of § 50, when read as a whole, to suggest that the parties intended that the discovery of hazardous substances would nullify the contractor's indemnification obligation. Further, even if subsection 50A did nullify the indemnity provision of subsection 51D, the record clearly shows that the conditions precedent to the application of subsection 50A were not met, because the city did notify JDC of the contamination more than four months before the incident giving rise to the underlying claims of the plaintiffs.

3. Even if the failure of the city to notify JDC of the hazardous contamination during contract negotiations could be said to constitute fraud in the inducement, such fraud would not render the contract void, but rather only voidable. Because JDC decided to continue to perform under the contract rather than seek rescission of the contract after being notified by the city of the contamination, JDC would not be entitled to the relief it seeks, the voiding of the indemnity provision of the contract, even if it were able to prove fraud in the inducement.

4. There is no merit in the assertion of JDC that the provision in the contract between HRC and SME whereby HRC agreed to limit SME's liability for its professional acts, errors, or omissions to a fixed sum acted as a waiver by SME of JDC's indemnification obligation under subsection 51D of JDC's contract with the city.

Affirmed.

INDEMNITY — CONTRACTS — CONSTRUCTION.

An indemnity contract is to be construed in the same fashion as are contracts generally; where the terms of a contract are unambiguous, their construction is for the court to determine as a matter of law; the court must determine the intent of the parties by reference to the contract language and may not look outside the contract to assess the parties' intent.

*Stark, Reagan & Finnerty, P.C.* (by *Michael H. Whiting* and *Christopher E. LeVasseur*), for Soil and Material Engineers, Inc.

*Plunkett & Cooney, P.C.* (by *William D. Booth* and *Brian T. McGorisk*), for Hubbell, Roth & Clark, Inc.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael E. Cavanaugh* and *Graham K. Crabtree*), for Jay Dee Contractors, Inc.

Before: O'CONNELL, P.J., and SAWYER and SMOLENSKI, JJ.

PER CURIAM. This case arises from a construction contract indemnity provision. Third-party defendant Jay Dee Contractors, Inc. (JDC), appeals as of right from the trial court's order granting summary disposition to third-party plaintiffs Hubbell, Roth & Clark, Inc. (HRC), and Soil & Material Engineers, Inc. (SME), with respect to their indemnity claim. The trial court concluded that JDC was required to indemnify HRC and SME in the underlying personal injury action. We affirm.

## I. EXPRESS INDEMNITY CONTRACT

JDC argues that the trial court erroneously enforced the indemnity provision contained in its construction contract with the city of East Lansing. JDC contends that another contract provision, regarding undisclosed environmental contamination, relieves JDC from its obligations under the indemnity provision. In the alternative, JDC contends that the two contract provisions conflict to such an extent that they create an ambiguity that must be resolved by a jury. The trial

court rejected JDC's argument, ruling that the contract language clearly required JDC to indemnify HRC and SME. We agree.

A right to indemnification can arise from an express contract, in which one of the parties has clearly agreed to indemnify the other. *Langley v Harris Corp*, 413 Mich 592, 596; 321 NW2d 662 (1982); *Dale v Whiteman*, 388 Mich 698, 704; 202 NW2d 797 (1972). An indemnity contract is construed in the same fashion as are contracts generally. *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 603; 576 NW2d 392 (1997). When the terms of a contract are unambiguous, their construction is for this Court to determine as a matter of law. *Id.* at 604. Further, " '[t]he cardinal rule in the interpretation of contracts is to ascertain the intention of the parties.' " *Id.* at 603, quoting *Klever v Klever*, 333 Mich 179, 186; 52 NW2d 653 (1952). This Court must determine the intent of the parties to a contract by reference to the contract language alone. This Court may not look outside the contract to assess the parties' intent. *Zurich, supra* at 603-604.

JDC's contract with the city expressly provides that JDC must indemnify and defend certain parties against any and all claims arising from bodily injuries that occur during the performance of the construction contract. The indemnity provision, contained in subsection 51D of the parties' contract, reads as follows:

> The Contractor agrees to indemnify, defend, and save harmless the Owner and the Engineer, their consultants, agents, and employees, and all additional named insureds from and against any and all claims, demands, causes of action, damages, losses or expenses including costs and attorney fees because of bodily injury, whether actual or

merely alleged, including death at any time resulting there-from sustained by any person or persons, or on account of damage to property, whether actual or merely alleged, including loss of use thereof, arising out of, in connection with or in relation to the Contract or the performance of this work, whether such injuries to persons are due, or claimed to be due, to the negligence of the Contractor, his Subcontractors, the Owner, the Engineer, or their consultants, agents, or employees, or any additional named insured, *except* only such injury or damage as shall have been occasioned by the sole negligence of the Owner, the Engineer, or their agents and/or consultants.

According to its own terms, the indemnity provided in subsection 51D extends to HRC, which acted as the city's engineer on the construction project at issue, as well as SME, which was hired by HRC to serve as an environmental consultant on the construction project. Standing on its own, subsection 51D clearly and unambiguously requires JDC to indemnify both HRC and SME with respect to plaintiffs' personal injury claims.

However, JDC argues that another section of the contract, subsection 50A, overrides the indemnity provision contained in subsection 51D. Subsection 50A provides that the city "shall be responsible" for any hazardous substance uncovered or revealed on the construction site, but only when the following criteria are met: (1) the hazardous substance was not shown or indicated in drawings, specifications, or contract documents, (2) the city "did not otherwise give [JDC] any notice of the possible presence of such substance," (3) the hazardous substance was not discovered by JDC, if JDC elected to perform a reasonable and competent inspection and investigation of the site, and (4) the hazardous substance presents a substantial danger, in the absence of certain safety pre-

cautions, to persons at the work site. JDC argues that the city's agreement to "be responsible" for undisclosed hazardous substances negates the indemnity provision contained in subsection 51D. Under JDC's theory, the city's responsibility for undisclosed environmental contamination encompasses liability for personal injuries that occur as the result of contact with such substances.

HRC and SME argue that subsection 50A was not intended to negate the indemnity provision contained in subsection 51D. Rather, HRC and SME argue that § 50 was intended to provide for possible adjustments to the contract price and time frame in the event that delays or increased job costs resulted from unanticipated site conditions. We conclude that this argument has merit. Subsections 50B, 50C, and 50D of the contract specify the circumstances under which the discovery of previously undisclosed hazardous substances may entitle JDC to stop working on the project, along with the circumstances that may result in an adjustment to the contract price. Reading § 50 as a whole, and confining our analysis to the terms of the contract itself, we are satisfied that the parties did not draft § 50 with the intent to nullify JDC's indemnification obligation if hazardous substances were discovered at the construction site. Rather, we conclude that the parties drafted § 50 with the intent to provide for the possibility of work stoppages and adjustments in the contract price as a result of unanticipated environmental contamination encountered on the job site. We conclude that the parties' contract is unambiguous and that it must be enforced as written. The trial court properly granted HRC and SME's motion for summary disposition with respect to their indemnification claim.

Even if we chose to construe subsection 50A of the parties' contract to excuse JDC from its express contractual agreement to indemnify, we would conclude that the requisite circumstances specified in subsection 50A were not presented in the instant case. Pursuant to its own terms, subsection 50A does not apply unless the city "did not otherwise give [JDC] any notice of the possible presence of such substance." JDC admits that the city informed it about the petroleum contamination at the Action Auto site, the site of the underlying accident, approximately 4½ months before JDC's employees came into contact with the contamination. Because the city did provide JDC with advance notice of the hazardous substances that it would encounter, we decline to apply the language of subsection 50A in a manner that would invalidate the express indemnification provision contained in subsection 51D.

## II. FRAUD IN THE INDUCEMENT

JDC next argues that the trial court erroneously enforced the indemnity provision because its construction contract with the city was void for fraud in the inducement. JDC contends that the city failed to disclose the hazardous contamination at the Action Auto site during either contract bidding or final contract negotiations. JDC construes the city's failure to convey this information, before execution of the construction contract, as a type of silent fraud.

HRC and SME correctly argue that fraud in the inducement does not render a contract void, but merely voidable at the election of the defrauded party. *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 640; 534 NW2d 217 (1995); *Whitcraft v*

*Wolfe*, 148 Mich App 40, 52; 384 NW2d 400 (1985). JDC first discovered petroleum contamination at the Harrison Roadhouse site. At that time, JDC did not seek to rescind the construction contract on the basis that the city had fraudulently concealed the existence of environmental contamination. Instead, JDC continued to perform its contractual duties, thereby affirming the contract. Subsequently, the city informed JDC that petroleum contamination existed at the Action Auto site. Once again, JDC did not seek to rescind the construction contract on the basis of a claim of fraud in the inducement. Instead, JDC continued to perform its contractual duties, excavating soil from the tunnel for an additional 4½ months before it reached the Action Auto site. JDC does not seek rescission of its construction contract with the city. Rather, JDC seeks to render one particular provision of the contract, the indemnity provision contained in subsection 51D, void. Even if JDC were able to prove fraud in the inducement, JDC would not be entitled to the relief that it seeks.

We decline JDC's invitation to declare subsection 51D of the parties' contract void on the basis of a claim of fraud in the inducement. Given our resolution of this issue, we need not decide whether JDC has waived the defense of fraud in the inducement by failing to plead such fraud as an affirmative defense in its first responsive pleading. MCR 2.111(F).

### III. WAIVER OF INDEMNITY

Finally, JDC argues that SME waived any right of indemnification that it might have been entitled to under JDC's contract with the city. JDC argues that SME

waived such indemnification in its separate contract with HRC. We disagree.

SME's contract with HRC provided, in pertinent part:

> Client [HRC] agrees to limit SME's liability to [HRC], all construction contractors, and any third party arising from SME's professional acts, errors or omissions, such that the total aggregate liability of SME to all those named shall not exceed $50,000 or SME's total fee for the services rendered on the project, whichever is greater. . . . [HRC] further agrees to require of all contractors and subcontractors engaged on this project, an identical limitation of SME's liability for damages suffered by the contractor or the subcontractor arising from SME's professional acts, errors or omissions. *Neither the contractor nor any of the subcontractors assumes any liability for damages to others which may arise on account of* SME's *professional acts, errors or omissions, except as stipulated herein.* [Emphasis added.]

JDC focuses on the last sentence of the above paragraph to support its argument. JDC contends that, through this language, SME contractually agreed that JDC would not assume any liability for damages to others that might arise on account of SME's professional negligence. We do not agree that the contract language supports this proposition. By the terms of this contract provision, HRC agreed to limit SME's liability for its professional acts, errors, and omissions to a fixed sum. This contract provision is unrelated to and entirely distinct from JDC's express contractual agreement to indemnify the city, HRC, and SME. We therefore conclude that JDC's argument is without merit. The trial court properly granted summary disposition to HRC and SME with regard to their third-party indemnification claim.

Affirmed.