2011 WY 40

**PENNANT SERVICE COMPANY, INC.,**
a Colorado corporation, Appellant
(Third–Party Defendant),

v.

**TRUE OIL COMPANY, LLC,** Appellee
(Third–Party Plaintiff).

True Oil Company, LLC, Appellant
(Third–Party Plaintiff),

v.

Pennant Service Company, Inc., Appellee
(Third–Party Defendant).

Nos. S–09–0234, S–09–0235.

Supreme Court of Wyoming.

March 8, 2011.

Representing Pennant Service Company, Inc.: Rex O. Arney and Orintha E. Karns of Brown, Drew & Massey, LLP, Sheridan, WY. Argument by Ms. Karns.

Representing True Oil Company, LLC: Scott P. Klosterman and Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, WY. Argument by Mr. Murphy.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] This is an appeal and a cross-appeal between True Oil Company, LLC, and Pennant Service Company, Inc., a Colorado corporation. Both companies were originally involved in a negligence action brought by Christopher Van Norman after he was injured in an oil well accident. True Oil settled out of court with Van Norman for $500,000.00. The original suit was resolved in 2005, leaving only a third-party suit that alleged breach of contract and indemnification between True Oil and Pennant. After a bench trial on those issues, the trial court found in favor of True Oil. Pennant was found to have breached the contract, and the court awarded True Oil $500,000.00 in damages. This appeal followed.

---

* Chief Justice at time of oral argument.
**1.** The district court found that neither party had demanded a jury trial and that decision was not

## ISSUES

*Case 09–0234*

[¶ 2] Pennant states its issues as follows:

A. Was the indemnitee entitled to damages after failing to prove its damages came as a result of the breach of contract?

B. In the alternative, if the indemnitee is entitled to the award of damages from the indemnification clause, then:

 1. Did the trial court err by ruling that an indemnitee's burden of showing potential liability is met merely by the existence of the original plaintiff's claim?

 2. Did the trial court err by ruling that when only an indemnity issue is presented, there is no right to a jury trial? [1]

True Oil states the issues this way:

A. Should each of Pennant Well Service, Inc.'s, appellate arguments be resolved in favor of True Oil Company, LLC, as a result of Pennant Well Service, Inc.'s, admissions, stipulation, concession, and failure to raise these arguments in district court?

B. Did the district court correctly find that the indemnitee, True Oil Company, LLC, was entitled to $500,000.00 in breach of contract damages from indemnitor, Pennant Well Service, Inc.?

*Case 09–0235*

In its cross appeal, True Oil presents the following issues:

 1. Did the district court abuse its discretion when it failed to award attorney's fees to True when an express contractual provision exists for such an award, and True proved its fees at trial without rebuttal from Pennant?

 2. Did the district court abuse its discretion when it failed to award prejudgment interest to True on the liquidated settlement sum of $500,000.00 and the attorney's fees it incurred?

Pennant rephrases the issues as follows:

A. Whether a provision for attorney's fees contained solely in an indemnification

appealed. Accordingly, we shall not consider this issue further.

clause allows an indemnitee to recover attorney fees for a direct negligence action where the indemnification clause is void pursuant to Wyo. Stat. Ann. § 30–1–131.

B. Whether a provision for attorney's fees contained solely in an indemnification clause allows an indemnitee to recover attorney fees in an action between the parties to the contract attempting to establish a right to indemnification.

C. Whether prejudgment interest is available on a settlement amount involving the discretion and opinion of the party seeking the interest.

D. Whether prejudgment interest is available on attorney's fees in the absence of applicable statutory authority and absence of notice.

### FACTS

[¶ 3] On July 3, 2001, Christopher Van Norman was severely burned as the result of a flash fire on an oil and gas well owned by True Oil Company, LLC (True Oil), a Wyoming based company that owns and operates various oil and gas wells throughout Wyoming. Van Norman was employed by Pennant Service Company, Inc., a Colorado corporation that contracted with True Oil to provide the necessary equipment, as well as a four-person crew to perform "workover" operations on the True Oil well.

[¶ 4] Van Norman filed suit against True Oil, Halliburton, Inc., Weatherford, and eventually Pennant alleging, among other things, that " ... True Oil failed to properly and safely supervise said project, and otherwise failed to implement basic and important safety precautions and/or to supervise the proper placement of equipment at the well thereby creating or failing to prevent a dangerous work environment for [Van Norman]," and that "Pennant and its employees, excluding himself, were negligent and that such negligence is imputed to True Oil under the legal theory of respondeat superior." [2]

[¶ 5] True Oil filed a third-party complaint against Pennant, alleging that Pennant

breached the terms of its Master Service Contract (MSC). True Oil alleged that Pennant breached the MSC by: (1) failing to provide fully trained personnel capable of operating its equipment and performing its work; (2) failing to provide a full crew to perform its work; (3) failing to perform its work in a good and workmanlike manner; (4) failing to perform its work in compliance with all state and federal laws, rules, and regulations; and (5) failing to furnish True with insurance coverage. In its answer to True Oil's third-party complaint, Pennant admitted that it agreed to indemnify True Oil for the amount of any judgment or settlement that might be entered against True Oil which is attributable to the negligence of Pennant and its employees. Settlement discussions ensued between True Oil and Van Norman. Neither Pennant nor its insurer, Mid–Continent, participated despite invitations to do so. On December 7, 2005, True Oil accepted Van Norman's demand to settle all claims for the total sum of Five Hundred Thousand Dollars ($500,000.00). In consideration for this sum, Van Norman agreed to dismiss with prejudice all of his claims against True Oil for its own potential negligence, as well as True Oil's vicarious liability for Pennant's negligence arising out of the July 3, 2001 accident.

[¶ 6] Regarding the settlement between Van Norman and True Oil, Pennant signed a stipulation agreeing to the "reasonableness" of the settlement, and by 2006, all that remained of the underlying litigation was the third-party claims between True Oil and Pennant. A bench trial was held in August of 2008, after which the trial court found Pennant to have breached its contract with True Oil, and that the damages were equal to the settlement amount True Oil had paid Van Norman. Furthermore, Pennant was to pay the attorney's fees and costs from the time the amended complaint was filed alleging vicarious liability. This appeal followed.

### STANDARD OF REVIEW

[¶ 7] We very recently stated in *Hofstad v. Christie*, 2010 WY 134, ¶ 7, 240 P.3d 816, 818 (Wyo.2010):

---

**2.** Weatherford and Halliburton were each dismissed from the suit on March 11, 2005, and

August 16, 2005, respectively.

Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005) (citing *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) and *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo. 1999)).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004). Further,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted) (some citations omitted).

## DISCUSSION

[¶ 8] Pennant argues that True Oil failed to prove that its damages for indemnification were reasonably foreseeable as a result of the breach of contract by Pennant. Also, Pennant argues that True Oil presented no evidence at trial that its damages (from Pen-

nant's alleged breaches of contract) were foreseeable and naturally flowed from the breaches of the MSC, and failed to provide any evidence that the damages were within the contemplation of the parties at the time of contracting. In response, True Oil asserts that it was not required to prove its damages because Pennant stipulated to the "reasonableness" of True Oil's settlement with the original plaintiff. True Oil maintains that even if this Court finds that the stipulation is not proof of Pennant's potential liability, the evidence shows that True Oil was potentially liable for Pennant's negligence.

[¶ 9] This case began when Christopher Van Norman sued True Oil, among others, for his injuries suffered at work. True Oil filed a third-party complaint against Pennant Service Company which essentially became a breach of contract action between the two companies. True Oil claimed that indemnification was the remedy for Pennant's breach of contract. Pennant was asked repeatedly to either participate in the settlement negotiations with Van Norman or to approve the settlement. However, Pennant never participated in the negotiations, but in the end stipulated to the "reasonableness" of the settlement. As the district court stated:

> [T]he action between True and Pennant is not one alleging that Pennant acted negligently against True. It is instead an action based on Pennant's refusal to participate or indemnify True for its settlement with the plaintiff in a negligence action.

The issue the Court is called upon to address is as follows: Would Pennant be in breach of contract if it were not required to indemnify True Oil for True's good-faith settlement with Van Norman? The short answer to this question is yes.

[¶ 10] We begin our efforts to explain our more detailed answer to this question by examining the law associated with indemnity. Indemnity has its roots in equitable principles of restitution and unjust enrichment. 2 George E. Palmer, *The Law of Restitution* § 10.6(c) (1978). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1

(1937). *Schneider Nat., Inc. v. Holland Hitch Co.*, 843 P.2d 561 (Wyo.1992). The traditional basis for distinguishing indemnity from tort based liability relied on unequal fault of the actors. *Id.*

> [Any] attempt to reconcile the numerous decisions and particularly the sweeping pronouncements often found in them, is an exercise in frustrating utility. The law as to indemnity among tortfeasors, like that of contribution among them, is in a state of development, flux and evolution, and the two, in some aspects, appear to merge[.]

1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* § 3:26 at 518 (1983) (footnotes omitted). In general, the action for indemnity was premised on the desirable shifting of liability from a party who has paid damages but who should not have had to bear the entire burden alone. 6 Marilyn Minzer, Jerome H. Nates, Clark D. Kimball & Diana T. Axelrod, *Damages in Tort Actions* § 50.21 (1989). The Restatement (Second) of Torts § 886B(1) (1979) states:

> (1) If two persons are liable in tort to a third person for the same harm, and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

 [¶ 11] Wyoming endorses the universal view that where "an indemnitor declines to approve a proposed settlement or assume the burden of defense, then the indemnitee is only required to prove a potential liability to the original plaintiff in order to support a claim against the indemnitor." *Pan American Petroleum Corp. v. Maddux Well Serv.*, 586 P.2d 1220, 1225 (Wyo.1978). A showing of "potential liability" is required because the indemnitee must not be a mere volunteer who has settled the underlying claim when there was no exposure to legal liability that obligated him or her to do so. *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So.2d 1072, 1079–80 (Fla. Dist.Ct.App. 5th Dist.2003). Only if the indemnitor is not given notice and an opportunity to assume responsibility for the claim must the settling indemnitee show that it was actually liable to the plaintiff. *Id.* Although

this Court has not yet articulated the standard or test for proving potential liability, we are persuaded by the following description:

> The threshold for "potential liability" is not high, nor should it be. Where notice has been given to the indemnitor and the indemnitor has elected not to act to protect himself, he, in effect, consents to allow the indemnitee to act for him and will not be heard to complain about the outcome— except in the very limited circumstance where the indemnitee was not, in fact, at risk, but nevertheless paid money that it would never have owed to the plaintiff ... [T]he test for potential liability may be both subjective and objective, i.e., was the indemnitee at any risk of loss due to the claim and did the indemnitee have reason to believe he was at risk at the time the settlement was entered into?

*Camp*, 853 So.2d at 1083.

 [¶ 12] "The rule is the same in a case such as this where theories both within and without the indemnity agreement are asserted against the indemnitee and the indemnitor does not assume the defense of the claims within the contract's coverage." *Camp*, 853 So.2d at 1080 (citing *Heckart v. Viking Exploration, Inc.*, 673 F.2d 309, 313 (10th Cir.1982)). The indemnitee may settle for a reasonable amount and then recover that amount from the indemnitor by showing that it was not liable on any theory outside the indemnity agreement and was potentially liable on a theory covered by the agreement. *Id.* If, before settlement is concluded, the indemnitor is offered a choice between approving the settlement or taking over the defense of the claim, and refuses to do either, the indemnitee can recover by showing **potential** liability to the original plaintiffs and need not prove **actual** liability. *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 304–05 (5th Cir.1973).

> [A] settling indemnitee can recover from an indemnitor upon proof of the indemnitee's potential liability if the settlement terms are reasonable and if the indemnitor has notice of the suit, has notice of the settlement terms, and has failed to object to those terms even though he has had a

reasonable opportunity to approve or disapprove the settlement.

*Burke v. Ripp*, 619 F.2d 354, 360 (5th Cir. 1980) (Goldberg, J., concurring).

[¶ 13] We also appreciate the following discussion from a recent Michigan case, *Detroit Edison Co. v. City of Detroit*, 2009 WL 1830740, 2009 Mich.App. LEXIS 1441 (Mich. Ct.App. June 25, 2009):

Regarding a settling indemnitee's burden of establishing its liability to the underlying plaintiff to be entitled to indemnification from an indemnitor, the Court in *St. Luke's Hosp. v. Giertz*, 458 Mich. 448, 454, 581 N.W.2d 665 (1998), quoted with approval the following from 41 Am.Jur.2d, Indemnity, § 46, p. 380 (emphasis added):

A person legally liable for damages who is entitled to indemnity may settle the claim and recover over against the indemnitor, even though he has not been compelled by judgment to pay the loss. In order to recover, the indemnitee settling the claim must show that the indemnitor was legally liable, and that the settlement was reasonable. *In the event that an indemnitor is not afforded the alternative of participating in a settlement or conducting the defense against the original claim, an indemnitee settling the claim will have the burden of establishing actual liability to the original plaintiff rather than the lesser burden of showing potential liability.* [Italics in original.]

In this case, the submitted evidence showed that defendant was afforded an opportunity to participate in the underlying settlement negotiations, but declined to do so. Therefore, it was only necessary that plaintiff show its potential liability in the underlying action to recover on its claim for indemnification from defendant.

Under the potential liability standard, plaintiff was only required to show that the settlement was reasonable and that the underlying factual situation was one covered by the indemnity contract.

To determine the reasonableness of the settlement, it is necessary to consider the amount of the settlement in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. *Id.* at 355–356.

. . . .

Whether the underlying factual situation is covered by the indemnity agreement requires only a straight-forward analysis of the underlying facts and the terms of the indemnity contract. *Grand Trunk, supra* at 357. An indemnity contract is construed in the same fashion as are contracts generally. *Hubbell, Roth & Clark, Inc. v. Jay Dee Contractors, Inc.*, 249 Mich.App. 288, 291, 642 N.W.2d 700 (2001). Where the language of the contract is clear and unambiguous, interpretation is limited to the actual words used. An unambiguous contract must be enforced according to its terms. *Burkhardt v. Bailey*, 260 Mich. App. 636, 656, 680 N.W.2d 453 (2004). The allegations of the complaint seeking indemnification, as well as the underlying complaint must be examined to determine whether there is an indemnity obligation. *Sherman v. DeMaria Bldg. Co.*, 203 Mich. App. 593, 601–602, 513 N.W.2d 187 (1994); *Paul v. Bogle*, 193 Mich.App. 479, 496, 484 N.W.2d 728 (1992).

In this case, the indemnity clause required defendant to indemnify plaintiff where there is (1) loss or damage to any person, (2) resulting directly or indirectly from the use, misuse, or presence of plaintiff's electricity on the city's premises or elsewhere, (3) after the electricity passes the point of delivery to defendant. The underlying action involved a claim for loss to a person who was killed by the presence of electricity supplied by plaintiff after it was delivered to defendant. The underlying claim clearly falls within the scope of the parties' indemnity agreement.

Finally, we wish to briefly address defendant's argument that there is an internal inconsistency between finding that plaintiff had "potential liability" and the indemnity clause provision precluding its application if the loss or damage in the underlying case was "occasioned by active negligence of plaintiff, its agents or em-

ployees." As discussed below, it is not inconsistent to conclude that plaintiff had "potential liability" while at the same time concluding that there was no genuine issue of material fact that the exception to the indemnity provision regarding active negligence does not apply.

Our Court has made clear that the "potential liability" test first discussed in *Ford, supra*, does not require any plenary discussion or analysis of the indemnitee's liability in the underlying case. *Grand Trunk, supra* at 359–360. Instead, as the *Ford* Court explained, "potential liability" in these cases "means nothing more than that the indemnitee acted reasonably in settling the underlying suit." *Ford, supra* at 278. What is "reasonable in settling the underlying suit" is determined by considering the following two criteria:

> The reasonableness of the settlement consists of two components, which are interrelated. The fact-finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. [*Id.*]
>
> . . . .

Thus, under the controlling case law, although the "risk of exposure" is a consideration in determining the reasonableness of the settlement in the underlying suit, the risk of exposure is determined by determining the probable amount of a judgment if the plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. Coming to this more general conclusion is quite different than the more specific and more demanding clause within the indemnification agreement, which requires that it be proven that the injury or damage was occasioned by the negligence of plaintiff. Thus, the standards are different and the generalized facts and circumstances presented by plaintiff regarding the settlement and underlying case were sufficient to satisfy this "potential liability" standard, but do not establish a genuine issue of material fact regarding active negligence under the indemnity provision. [Citations and footnote omitted.]

[¶ 14] In this case, the trial court did not apply the "potential liability" test. However, we can presume that the court did not apply the potential liability test in this case because True Oil was not required to make a showing of potential liability—rather, by stipulating to the reasonableness of the $500,000.00 settlement paid by True Oil, Pennant essentially pointed out True's potential liability. The record reflects as much. After Pennant and True Oil filed a Joint Statement of the Parties, in which the stipulation is found, Pennant's counsel stated at trial:

> [I]nitially, we were going to be here on the reasonableness of the settlement between True and Van Norman. However, the reasonableness of that $500,000.00 settlement is no longer an issue . . . we are now down to the more usual comparative fault apportionment analysis.

[¶ 15] Before the stipulation to the reasonableness of the settlement occurred, Pennant was aware that the vicarious liability of True Oil was an issue. In prior proceedings in the district court, the court ruled that Van Norman should be allowed to amend his complaint to add a vicarious liability claim against True Oil. After that, True Oil filed its third-party complaint against Pennant. Pennant's insurer, Mid–Continent Casualty Company, denied True Oil's demand for insurance coverage and a defense for the vicarious liability allegation. Mid–Continent filed a declaratory judgment action in the federal district court, seeking a determination on those demands. The federal court noted that there was a realistic possibility of liability in the facts and circumstances that existed following the amendment of the Van Norman complaint, to include a vicarious liability claim against True Oil. The court stated:

> Pennant agreed to indemnify True in the MSC. Coverage for this agreement is provided for in the CGL. . . . The agreement providing for indemnification from all claims and damages caused by the negligence of others, which would include the claims of vicarious liability in this case, is

valid and enforceable under applicable Wyoming law.

[¶ 16] Although it was not labeled as such, we agree with the court that potential liability was established when the Van Norman complaint was amended to include a claim for vicarious liability. This conclusion was based upon much more than the mere allegation, but the showing by True Oil throughout the lawsuit that it was potentially liable. Pennant mistakenly relies on *Pan American Petroleum Corp.*, 586 P.2d at 1225, which states:

> [I]f an indemnitor declines to approve a proposed settlement or assume the burden of the defense, then the indemnitee is only required to prove a potential liability to the original plaintiff in order to support a claim against the indemnitor.

However, Pennant stipulated to the reasonableness of the settlement in this case and had to have considered the possibility of indemnification in accordance with the contract. Pennant was asked repeatedly to participate in the settlement negotiations with Van Norman, or to approve the settlement amount. Pennant did not object or respond in any manner until it stipulated to the reasonableness of the amount of the settlement.

[¶ 17] Regarding the breach of contract claims, to which Pennant does not object on appeal, the district court found as follows:

> 38. In its Third–Party Complaint, True has alleged that Pennant breached the terms of the Master Service Contract by: (1) failing to provide fully trained personnel capable of operating its equipment and performing its work; (2) failing to provide a full crew to perform its work; (3) failing to perform its work in a good and workmanlike manner; (4) failing to perform its work in compliance with all state and federal laws, rules and regulations; and (5) failing to furnish True with insurance coverage.
>
> 39. Pennant was responsible for providing safety training to all Pennant employees.
>
> . . . .
>
> 62. The proximate cause of the accident which injured Christopher Van Norman on July 3, 2001, was Pennant's decision to circulate the well to the flat tank, rather than to a flare pit which was being dug at the time of the accident.
>
> 63. 100% of the fault must be allocated to Pennant.

[¶ 18] Pennant argues that "only those damages which are the natural and foreseeable result of a breach of contract are recoverable." True Oil actually agrees with that statement, and contends that the $500,000.00 settlement payment was absolutely within the contemplation of the parties in the MSC. The indemnification clause in the MSC reads as follows:

> 6. *Indemnification.* To the fullest extent permitted by law, the Contractor shall and does agree to indemnify, protect, defend and hold harmless the Company, its affiliated companies, their joint owners, officers, directors, shareholders, employees and agents (collectively "Indemnitee") from and against all claims, damages, losses, liens, causes of action, suits, judgments, penalties, fines and expenses, including attorney fees, of any nature, kind or description whatsoever (collectively "Liabilities") of any person or entity whomsoever arising out of, caused in whole or in part by or resulting directly or indirectly from any act or omission, including negligence, of Contractor or its sub-contractors, their agents, anyone directly or indirectly employed by them or anyone they have the right to control or exercise control over, even if these liabilities are caused in part by the negligence or omission of any Indemnitee.

Pennant executed this contract which expressly states that Pennant must indemnify True Oil for settlements or judgments to Pennant's employees arising out of Pennant's acts or omissions. Pennant was well aware of True Oil's vicarious liability risk, and Pennant agreed, through the contract, to indemnify True Oil for any damages resulting therefrom. Furthermore, by stipulating to the reasonableness of the $500,000.00 settlement paid by True Oil to Van Norman, Pennant supported True Oil's "potential liability" for Pennant's negligence.

[¶ 19] We are convinced that the issue of reasonable apprehension of liability was clearly established in this instance, and that the damages in this case were proven to a reasonable degree of certainty. *Sannerud v. Brantz,* 879 P.2d 341, 345 (Wyo.1994). As evidenced by the contract, Pennant and True Oil each contemplated indemnification damages for bodily injuries when they signed. The district court's award of $500,000.00 to True Oil is affirmed.

## True Oil's Cross–Appeal

### 1. Attorney fees

[¶ 20] We review a district court's decision regarding the award of attorney's fees and costs for abuse of discretion. A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances. The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion. *Shepard v. Beck,* 2007 WY 53, ¶ 14, 154 P.3d 982, 988 (Wyo.2007).

[¶ 21] In its cross-appeal, True Oil claims that the trial court erred in declining to award attorney fees. In the Amended Judgment and Order issued by the trial court, the court limited attorney fees and costs awarded to True Oil to those incurred from the date of Van Norman's amended complaint (March 15, 2005), until the date of True Oil's settlement with Van Norman (December 7, 2005) on the basis that during that period, True Oil was entitled to a defense of the vicarious liability claim. Regarding the attorney's fees incurred by True Oil from October of 2001 to March of 2005, the trial court denied the award of fees on the basis that True Oil was defending against claims of its own negligence. And finally, regarding attorney's fees incurred by True Oil after December 7, 2005, the court denied any award of fees and did not include a basis for the denial in its order.

[¶ 22] In *Weiss v. Weiss,* 2009 WY 124, ¶ 8, 217 P.3d 408, 410 (Wyo.2009), this Court held:

Although Wyoming generally subscribes to the American rule regarding the recovery of attorney's fees, under which rule each party pays his or her own fees, a prevailing party may be reimbursed for attorney's fees when provided for by contract or statute. [citations omitted.]

[¶ 23] In *Meyer v. Hatto,* 2008 WY 153, ¶ 26, 198 P.3d 552, 557–558 (Wyo.2008), this Court held more specifically:

A prevailing party ... is generally entitled to be reimbursed for his attorney's fees and costs when an express contractual authorization exists for such an award....

While the general rule is that a valid provision for attorney's fees in a [contract] is as much an obligation of the contract as any part of it, the trial court still has discretion in exercising its equitable control to allow only such sum as it thinks reasonable. A trial court in its discretion may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable.

*Combs v. Walters,* 518 P.2d 1254, 1255 (Wyo.1974) (citations omitted).

[¶ 24] With these principles in mind, we now turn to the question of attorney's fees between Pennant and True Oil. The express contractual provision regarding indemnification reads as follows:

6. *Indemnification.* To the fullest extent permitted by law, the Contractor shall and does agree to indemnify, protect, defend and hold harmless the Company, its affiliated companies, their joint owners, officers, directors, shareholders, employees and agents (collectively, "Indemnitee") from and against all claims, damages, losses liens, causes of action, suits, judgments, penalties, fines and expenses, ***including attorney fees,*** of any nature, kind or description whatsoever (collectively, "Liabilities") of any person or entity whomsoever arising out of, caused in whole or in part by or resulting directly or indirectly from any act or omission, including negligence of Contractor [Pennant] or its sub-contractors, their agents, anyone directly or indirectly employed by them or anyone they have the right to control or exercise control over, even if these liabilities are caused in part by the negligence or omission of any indemnitee. [Emphasis added.]

This Court interprets an indemnity provision as it does any other contract, affording the language its plain meaning. *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC,* 2008 WY 101, ¶ 24, 191 P.3d 125, 133 (Wyo. 2008). According to True Oil, this contractual provision is clear and complete evidence of the parties' intent that Pennant pay for all damages and losses, including attorney's fees, caused in whole or in part from any act or omission on the part of Pennant. True Oil maintains its position that Pennant's breach of its contractual obligations was the sole cause of the accident and injuries to Christopher Van Norman, and accordingly, Pennant owes True Oil its attorney's fees. Conversely, Pennant argues that the indemnity clause in the MSC does not "unequivocally confer an indemnity obligation on Pennant in a suit between the parties."

*Attorney's Fees incurred prior to March 16, 2005*

[¶ 25] The district court denied attorney's fees incurred by True Oil prior to March 16, 2005, stating that from October of 2001 to March 16, 2005, True Oil was "defending against claims of its own negligence." Although Wyoming law does not allow True Oil to be indemnified for its attorney's fees for its own negligence, True Oil asserts it should be indemnified for its attorney's fees incurred in defending allegations of its own negligence.

[¶ 26] In the district court's findings of fact, it stated that Pennant was 100% at fault, and that Pennant breached the MSC in all manners alleged by True Oil. The court then awarded True Oil $500,000.00 in damages.

[¶ 27] Wyoming has an oil field specific anti-indemnity statute which invalidates indemnification clauses under certain circumstances. Wyo. Stat. Ann. § 30–1–131 (LexisNexis 2009) states as follows:

**§ 30–1–131. Provisions for indemnity in certain contracts; invalidity.**

(a) All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:

(i) Death or bodily injury to persons;

(ii) Injury to property; or

(iii) Any other loss, damage, or expense arising under either (i) or (ii) from:

(A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or

(B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Worker's Compensation Law [§§ 27–14–101 through 27–14–805] of this state.

"An agreement containing a provision violative of the anti-indemnity statute is not void and unenforceable in total, but only to the extent that it violates the statute. Further, indemnification is not prohibited except for the indemnitee's own negligence." *Gainsco Ins. Co. v. Amoco Production Co.,* 2002 WY 122, ¶ 82, 53 P.3d 1051, 1075 (Wyo.2002). However, although indemnification is not available for liability arising from negligence, reasonable attorney's fees and costs expended in the defense of the underlying action are available to be recovered. *Northwinds of Wyoming, Inc. v. Phillips Petroleum Co.,* 779 P.2d 753, 759 (Wyo.1989).

[¶ 28] Regarding § 30–1–131, Pennant argues that the statute voids the indemnification clause contained in the contract to the extent that it protects True Oil from loss for its own negligence. Pennant questions True's reliance upon *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351 (Wyo.1978) and *Northwinds.* In *Northwinds,* this Court held that "the district court correctly deter-

mined that Phillips was entitled to its reasonable attorneys' fees and costs expended in defense of the underlying action." 779 P.2d at 760. This, argues True Oil, indicates that Wyoming law supports True's argument that it should be indemnified for attorney's fees and costs incurred in defending allegations of its own negligence. However, Pennant points out that *Northwinds* does not apply § 30–1–131, and thus True Oil's reliance on *Northwinds* is misplaced. Pennant has similar difficulties with True Oil's reliance on *Mountain Fuel Supply*. There, True Oil urges that because the instant case and Mountain Fuel Supply both contain almost mirror-like indemnity clauses, and because the court in Mountain Fuel Supply held the following, it is entitled to indemnification for attorney's fees.

> Although the parties' agreement may be void to the extent that it attempted to indemnify Mountain Fuel from its own negligence, this is not to say that the agreement is void to the extent that it implicitly sought to indemnify Mountain Fuel from Emerson's negligence. Such an agreement is not prohibited by § 30–28.3, *supra*. As a result, if Mountain Fuel is found not negligent, and Emerson is found negligent, ... then Mountain Fuel is entitled to indemnification for its costs and legal fees as provided in the parties' agreement.

*Id.*, 578 P.2d at 1358. However, Pennant points out that to the extent the agreement in *Mountain Fuel Supply* sought to indemnify Mountain Fuel Supply from Emerson's negligence, such an agreement is not prohibited, and Mountain Fuel Supply was entitled to fees in that situation.

[¶ 29] True Oil's bottom line argument is that the anti-indemnity statute has no application to this case because the indemnitee, True Oil, was not negligent. True Oil states that it is not attempting to avoid liability for its own negligence; rather, it argues that it is attempting to recover a loss (attorney's fees) that is expressly provided for in the MSC. Pennant agreed to indemnify and hold True Oil harmless from "all ... damages, losses ... and expenses, including attorneys'

fees, ... arising out of [Pennant's acts, omissions and/or negligence]."

[¶ 30] We agree with True Oil and find the beginning of our analysis in the simplest of places—the freedom to contract. In *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 247 (Wyo.2000), this Court held that it does not lightly interfere with the freedom of contract between parties, and reiterated its reluctance to nullify the provisions of a contract made by competent parties. Furthermore, we note that the district court determined the accident that injured Van Norman was caused 100% by Pennant. Thus, the indemnification provision in the MSC was not a basis to be relied upon by the district court in denying True Oil's request for attorney's fees. It is a valid and enforceable part of the MSC. Consistent with our ruling in *Gainsco*, we take note that in a similar case, *Mid–Continent Casualty Co. v. True Oil Co.*, Case No. 05–CV–258J, 2006 WL 6318834, *Order on Cross Motions for Summary Judgment*, p. 18 (U.S.D.C.Wyo. 2006), the federal district court concluded:

> ... the contract is invalidated **only** to the extent that the agreement is one purporting to relieve True Oil from liability for its own negligence and not from vicarious liability claims brought under a respondeat superior theory. [Emphasis in original.]

[¶ 31] Relieving True Oil of any negligence, but then denying its attorney's fees in defending itself against Pennant was an abuse of discretion by the district court. True Oil is thus entitled to its attorney's fees incurred in defending the claims associated to this case, prior to March 16, 2005.

*Attorney's fees incurred after December 7, 2005*

[¶ 32] The district court denied True Oil's request for reimbursement of its attorney's fees incurred after December 7, 2005, without giving any basis or explanation.

[¶ 33] The majority rule is that a party is not entitled to its fees and costs incurred in establishing its right to indemnity:

> The general, and virtually unanimous rule appears to limit the allowance of

such fees to the defense of the claim indemnified against and not to extend such allowance for services rendered in establishing the right to indemnification. 41 Am.Jur.2d, *Indemnity,* § 36 (Supp. 1974); 42 C.J.S. *Indemnity,* § 13d (1944) ... [I]n the absence of *express* contractual terms to the contrary, an indemnitee may not recover legal fees incurred in establishing his right to indemnification.

*Jones v. Strom Construction Co., Inc.* (1974), 84 Wash.2d 518, 527 P.2d 1115, 1119.

*Amazi v. Atlantic Richfield Co.,* 249 Mont. 355, 816 P.2d 431, 434–35 (1991). See also *Citadel Corp. v. All–South Subcontractors, Inc.,* 217 Ga.App. 736, 458 S.E.2d 711, 712–713 (1995); *Seifert v. Regents of University of Minnesota,* 505 N.W.2d 83, 86–87 (Minn. App.1993).

[¶ 34] The indemnification clause at issue in the present case provides for the recovery of legal expenses, including attorney's fees incurred in the defense of a claim. Nothing in the clause suggests that it provides for the recovery of legal expenses incurred in establishing the right to indemnity. It is true in part that the attorney's fees that True Oil incurred in prosecuting its third-party complaint were those necessary to prove that Pennant breached the MSC, and that Pennant's breach was the sole cause of the accident injuring Van Norman. However, True Oil's attorney's fees incurred after December 7, 2005, were generally spent on its attempt to establish its right to indemnification. The MSC between True Oil and Pennant does not expressly provide for the recovery of attorney's fees incurred in an action to establish indemnity. Accordingly, the trial court did not abuse its discretion when it determined that True Oil was not entitled to attorney's fees incurred after December 7, 2005.

## 2. Prejudgment Interest

[¶ 35] True Oil also claims error in the trial court's refusal to award prejudgment interest. Prejudgment interest is an appropriate element of damages in some cases. *Millheiser v. Wallace,* 2001 WY 40,

¶ 11, 21 P.3d 752, 756 (Wyo.2001). True Oil takes issue with the trial court's Amended Judgment and Order because it does not contain any explanation of the denial of prejudgment interest. True Oil argues that in exercising its judgment, the trial court should have considered its finding that Pennant was 100% at fault for causing the accident in this case, and accordingly, the court could not have denied True Oil prejudgment interest on the basis of equitable considerations.

[¶ 36] Prejudgment interest is an accepted form of relief in Wyoming where the claim is "liquidated," which is defined as one that is readily computable by basic mathematical calculation. *Stewart Title Guar. Co. v. Tilden,* 2008 WY 46, ¶ 21, 181 P.3d 94, 101–102 (Wyo.2008).

> Prejudgment interest is allowed on the theory that an injured party should be fully compensated for his or her loss. It is the compensation allowed by law as additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment. It is appropriate when the underlying recovery is compensatory in nature and when the amount at issue is easily ascertainable and one upon which interest can be easily computed.

*Id.,* ¶ 28, 181 P.3d at 103–04 (citing 44 Am. Jur.2d *Interest and Usury* § 39 (2007)). Prejudgment interest constitutes a penalty for failure to pay money when due. *Rissler & McMurry Co. v. Atlantic Richfield Co.,* 559 P.2d 25, 32 (Wyo.1977).

[¶ 37] The general principle is that " 'he who retains money which he ought to pay to another should be charged interest upon it.' " 5 Arthur Linton Corbin, *Corbin on Contracts,* § 1046, at 280 n. 69 (1964). The successful claimant is compensated for the lost "use value" of the money owed. *Hansen v. Rothaus,* 107 Wash.2d 468, 730 P.2d 662 (1986). That is, an award of prejudgment interest is in the nature of preventing the unjust enrichment of the defendant who has wrongfully delayed payment. See 1 Dan B. Dobbs, *Law of Remedies,* 3.6(3), at 348–49 (2d ed.1993) ("in many cases the interest

award is necessary to avoid unjust enrichment of a defendant who has had the use of money or things which rightly belong to the plaintiff").

[¶ 38] On December 7, 2005, True Oil paid $500,000.00 to Christopher Van Norman to settle all claims asserted against it by him. True Oil asserts that this amount was readily computable and, thus, liquidated. According to True Oil, the district court erred by not including prejudgment interest in its Amended Judgment and Order.

[¶ 39] We believe *Wells Fargo Bank v. Hodder,* 2006 WY 128, ¶ 60, 144 P.3d 401, 420–21 (Wyo.2006), is instructive in this instance. There, we stated:

> Prejudgment interest is an appropriate element of damages in some cases. *Millheiser v. Wallace,* 2001 WY 40, ¶ 11, 21 P.3d 752, 755 (Wyo.2001). We have approved the award of prejudgment interest on liquidated sums in breach of contract actions when the amount due is readily computable by simple mathematical calculation. *Id.*

[¶ 40] In *Laramie Rivers Co. v. Pioneer Canal Co.,* 565 P.2d 1241, 1245 (Wyo.1977), we clarified that a mere difference of opinion as to the amount due or as to liability does not preclude prejudgment interest if the amount sought to be recovered is a sum certain, and the party from whom payment is sought receives notice of the amount sought. In *Laramie Rivers,* the amount sought to be recovered was established prior to entry of judgment by a written billing statement for a fixed amount. This Court remanded the case to the district court for determination of when the debtor received notice of the fixed amount claimed.

[¶ 41] In the instant case, the amount sought to be recovered was a sum certain of which Pennant had notice prior to the trial court's decision. Both parties were well aware of the settlement amount between True Oil and Van Norman, as was the court. As True Oil suggests, and we agree, the $500,000.00 sum awarded by the court was a liquidated sum. Given the circumstances present in this case, we reverse the trial court's ruling that this was not an appropriate case for prejudgment interest.

## CONCLUSION

[¶ 42] We affirm the ruling on the breach of contract claim. Pennant breached its contract with True Oil, and the court's award of $500,000.00 to True Oil is affirmed.

[¶ 43] Regarding attorney's fees, we conclude that the trial court was half right in its decision. Reversing the trial court, we conclude that True Oil is entitled to its attorney's fees incurred in defending the claims associated with this case, prior to March 16, 2005. However, we affirm the court's ruling that True Oil is not entitled to attorney's fees incurred after December 7, 2005.

[¶ 44] Finally, the trial court's ruling that this was not an appropriate case for prejudgment interest is reversed.

BURKE, Justice, concurring in part and dissenting in part.

[¶ 45] I concur in part and dissent in part. I disagree with the majority's decision to reverse the district court's denial of True's claim for attorney fees incurred prior to the filing of the amended complaint. I would affirm on this issue because, prior to the filing of the amended complaint, True was being sued solely for its own negligence. Any agreement to indemnify True for its own negligence was void pursuant to Wyo. Stat. Ann. § 30–1–131(a)(iii) (LexisNexis 2009):

> § 30–1–131. **Provisions for indemnity in certain contracts; invalidity.**
>
> (a) **All agreements,** covenants or promises contained in, collateral to or affecting any agreement **pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability** for damages for:
>
> > (i) Death or bodily injury to persons;
> >
> > (ii) Injury to property; or
> >
> > (iii) Any other loss, damage, or expense arising under either (i) or (ii) from:
> >
> > > (A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any

independent contractor who is directly responsible to such indemnitee; or

(B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, **are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence.** This provision shall not affect the validity of any insurance contract or any benefit conferred by the Worker's Compensation Law [§§ 27–14–101 through 27–14–805] of this state.

(Emphasis added.)[3] The contractual obligation at issue here and the impact of Wyo. Stat. Ann. § 30–1–131 on that obligation was addressed, albeit in a slightly different context, by the federal district court for the District of Wyoming in *Mid–Continent Casualty Co. v. True Oil Co.*, Case No. 05–CV–258–J, 2006 WL 6318834 (U.S.D.C.Wyo. 2006), referenced in the majority opinion.

[¶ 46] There were two lawsuits in federal court regarding Mid–Continent's obligation to defend and indemnify True for claims asserted by Mr. Van Norman in this case. The first action was initiated by True after Mid–Continent had rejected True's initial demand that Mid–Continent provide a defense and indemnify True for claims made by Mr. Van Norman. Mid–Continent based its denial on its claim that the indemnity provision in True's contract with Pennant "was void as violating public policy of Wyo. Stat. § 30–1–131." Judge Johnson agreed with Mid–Continent and granted its motion for summary judgment. True appealed and the decision was affirmed. According to Judge Johnson: "This Court, and the Tenth Circuit, determined that the indemnity provision whereby Pennant agreed to hold True Oil harmless for True Oil's own negligence arising out of the work to be performed by Pennant had no effect due to Wyo. Stat. § 30–1–131, the Wyoming oilfield anti-indemnity statute."

[¶ 47] Shortly after Judge Johnson entered summary judgment against True, the district court in this action allowed Mr. Van Norman to file his amended complaint. This led to a second round of litigation in federal court. This time, Judge Johnson determined that True was entitled to indemnification for the vicarious liability claims:

> The Court need not reiterate all facts and arguments that have been raised and asserted in this litigation further to determine that Mid–Continent's arguments are without merit. Pennant agreed to indemnify True in the MSC. Coverage for this agreement is provided for in the CGL. The agreement to indemnify is void only to the extent that it was one which purported to relieve True Oil from loss of liability caused by True Oil's own negligence. The agreement providing for indemnification from all claims and damages caused by the negligence of others, which would include the claims of vicarious liability in this case, is valid and enforceable under applicable Wyoming law.

> . . .

> The Tenth Circuit recognized that were it not for the operation of Wyo. Stat. Ann. § 30–1–131, an insured contract would exist between Pennant and True and—and, accordingly, True Oil would be an additional insured on Pennant's CGL policy with Mid–Continent. *True Oil Co. v. Mid–Continent Casualty Co.*, 173 Fed.Appx. [645], at 650 [ (10th Cir.2006) ]. The Tenth Circuit did not go on, however, to consider whether the contract was valid and enforceable to the extent that it did not violate the Wyoming anti-indemnity statute. This Court believes that had the circuit court considered the issue if it had been before that court, it would have reached the same conclusion that this Court reaches here. This Court finds that the contract is invalidated only to the ex-

---

**3.** It is undisputed that the indemnity agreement at issue in this case is an "agreement … pertaining to any well for oil, gas or water … which purport[s] to indemnify the indemnitee against loss or liability for damages."

tent that the agreement is one purporting to relieve True Oil from liability for its own negligence and not from vicarious liability claims brought under a respondeat superior theory.

Accordingly, the Court finds that the motion for partial summary judgment filed by True, seeking a determination that it is entitled to seek indemnification for the late-raised allegations of vicarious liability in the Van Norman litigation, should be granted. To the extent that Mid–Continent's motion and responses seek a contrary determination, the request will be denied.

(Footnotes and emphasis omitted.)

[¶ 48] Despite finding for True on its indemnity claim arising from the vicarious liability allegations in the amended complaint, Judge Johnson specifically denied True's claim for attorney fees incurred prior to the filing of the amended complaint:

True has argued that Mid–Continent must pay all costs incurred by True in defending all of this related litigation. This Court disagrees. It is true that Wyoming law requires an insurer to defend an entire action. *Shoshone First Bank v. Pacific Employers Ins. Co.,* 2 P.3d 510 (Wyo. 2000). Mid–Continent has tendered a defense to True for the vicarious liability allegations asserted against it in the Van Norman litigation, under a reservation of rights. True urges this Court to determine as a matter of law that True is entitled to recover all costs associated in this litigation, under *Shoshone First Bank.*

The Court does not agree that *Shoshone First Bank* compels the result True urges. *Shoshone First Bank* does state that, "unless a policy between an insured and an insurer provides for allocation of defense costs in the instance in which some claims are covered and some are not, Wyoming will not allow allocation of defense costs from the insurer to the insured." *Id.,* 2 P.3d at 517. In that case, where the policy

did not provide coverage for prosecuting a counterclaim, the Wyoming court determined the insurer was not required to assume the expense of prosecuting the insured's counterclaim and permitted the insurer to allocate and recover those costs.

. . .

This case has essentially been presented as two separate pieces of litigation. The Court believes that **Mid–Continent is not required to pay the costs incurred by True in the Van Norman litigation prior to the amendment of the complaint, as that was not a matter for which there was coverage and it has been determined that Mid–Continent properly refused to defend.** No "apportionment" of covered and non-covered claims is necessary in this case. None of the law cited by True obliges Mid–Continent to pay costs of defending where there was no coverage.

(Emphasis added.) In this case, the district court's decision denying attorney fees for the period prior to the filing of the amended complaint dovetailed with the conclusions reached by Judge Johnson in the federal litigation.

[¶ 49] The majority's decision to reverse the district court and award attorney fees is essentially premised upon "the freedom to contract" and our precedent as reflected in *Northwinds of Wyo. v. Phillips Petroleum,* 779 P.2d 753 (Wyo.1989) and *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351 (Wyo. 1978). Both cases are clearly distinguishable from the instant case and the "freedom to contract" has limits. Here, the "freedom to contract" is restricted by Wyo. Stat. Ann. § 30–1–131, which specifically provides that agreements to indemnify an entity for its own negligence "are against public policy and are void and unenforceable." *Northwinds* is inapplicable because this Court was not applying Wyo. Stat. Ann. § 30–1–131 to the indemnity provision at issue.[4] In *Mountain Fuel Supply,* the Court awarded attorney

---

4. *See Northwinds,* 779 P.2d at 757 n. 5. "Neither party suggests that this is a case to which Wyo. Stat. § 30–1–131 (1977) applies. Section 30–1–131 embodies the legislative public policy determination that contract provisions indemnifying against loss or liability resulting from one's own negligence in an agreement pertaining to wells for oil, gas, or water or mines for minerals shall be void and unenforceable. We agree that § 30–1–131 has no applicability to the instant case." (Internal citation omitted.)

fees based upon an indemnity provision that was voided in part because it provided indemnification for the indemnitee's own negligence. However, in *Mountain Fuel Supply,* the indemnitee faced potential liability for the negligence of the indemnitor from the inception of the action.[5] That did not happen here and both Judge Johnson and the district court rejected True's claims to the contrary. According to Judge Johnson:

> True has argued that it and Mid–Continent were aware, as early as November 2001, that a vicarious liability claim might be asserted in the Van Norman litigation. Accepting for purposes of the argument that is so, the fact is that no claim against True Oil for vicarious liability was properly pled in the Van Norman litigation until 2005 after this Court's earlier summary judgment disposition.

In the instant case, the district court reached a similar conclusion. In Exhibit E to True's third party complaint against Pennant, True stated:

> We appeared before Judge James this morning to argue True Oil Company's *Motion in Limine* to prevent the Plaintiff from raising or arguing the issue of True's vicarious liability for any negligence of Pennant and Plaintiff Van Norman's opposition to that motion as well as his *Motion to Amend Complaint* to add a vicarious liability allegation. The Plaintiff was taking the position that the original Complaint is broad enough to include vicarious liability and argued that True's written demands on Pennant and Mid–Continent in late 2001 reflected that True was at least anticipating a vicarious liability claim.
>
> The Judge heard all of the arguments and determined that the Complaint was not broad enough to include a vicarious liability claim but that justice required that the Plaintiff be allowed to amend his Complaint to allege a *respondeat superior* rela-

tionship between True and Pennant and the allegation that True is therefore, vicariously liable for any negligence of Pennant or its employees. During that same hearing Judge James granted our oral motion to permit True to file a Third–Party Complaint against Pennant pursuant to the terms of the Master Service Contract, seeking to recover any costs, attorneys' fees and judgment against True, if any, based upon True's vicarious liability for Pennant's negligence.[6]

[¶ 50] In summary, there was no duty to defend or indemnify True for its attorney fees prior to the filing of the amended complaint in 2005. Prior to that time, True was being sued solely for its own negligence. The decision reached by the majority is at odds with the result reached in federal court and this state's public policy as reflected in Wyo. Stat. Ann. § 30–1–131. The district court's decision denying attorney fees prior to the amendment of the complaint should be affirmed.

---

5. *Mountain Fuel Supply* was decided well before the adoption of comparative fault as reflected in Wyo. Stat. Ann. § 1–1–109. In *Mountain Fuel Supply,* the indemnitee faced potential liability for the full amount of damages because of joint and several liability. *See Haderlie v. Sondgeroth,* 866 P.2d 703, 708 (Wyo.1993). Prior to the filing of the amended complaint in this case, True faced potential liability only for damages attributable to its own fault. *See* Wyo. Stat. Ann. § 1–1–109.

6. There is no transcript of the hearing on the motion to amend the complaint in the record on appeal. Exhibit E was a March 8, 2005 letter to Pennant from True's counsel.