**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED APRIL 1, 2009

TIMOTHY ZAHN,

      Plaintiff,

v                                  No. 136382

KROGER COMPANY OF MICHIGAN,

      Defendant/Cross-Plaintiff-Appellee,

and

F.H. MARTIN CONSTRUCTION COMPANY,

      Defendant/Cross-Defendant/
      Third-Party Plaintiff-Appellee,

and

CIMARRON SERVICES, INC.,

      Third-Party Defendant-Appellant.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

    Cimarron Services, Inc.,[1] appeals from a judgment in favor of F.H. Martin

---

[1] Cimarron was the third-party defendant below.

Construction Company[2] requiring Cimarron to indemnify Martin for a share of a settlement that Martin had paid as the result of an injury to an employee in a construction accident. Cimarron alleges that the language of the contract does not control. Instead, Cimarron contends that MCL 600.2956 effectively limits the application of express contractual indemnification clauses, because the statute mandates that parties may only be held responsible for their own pro rata share of the negligence.[3] The Court of Appeals rejected this argument and, in an unpublished opinion, held that MCL 600.2956 does not apply to contracts.[4] We granted leave to appeal to review this issue and asked the parties to also address whether the exclusive remedy provision of the Worker's Disability Compensation Act (WCDA), MCL 418.131(1), in any way precludes a third-party defendant employer from voluntarily subjecting itself to liability for negligence to an employee by virtue of an indemnification contract.[5] We affirm the judgment of

---

[2] Martin was a defendant, cross-defendant, and third-party plaintiff below.

[3] MCL 600.2956 provides:

> Except as provided in [MCL 600.6304], in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.

[4] *Zahn v Kroger Co of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued March 27, 2008 (Docket No. 274994).

[5] *Zahn v Kroger Co of Michigan,* 482 Mich 993 (2008).

2

the Court of Appeals in favor of Martin and hold that MCL 600.2956 does not apply to contract actions, and that an employer may voluntarily subject itself to liability for damages to employees from which it would otherwise be insulated. We write briefly to address these issues and to clarify the law regarding indemnification contracts.

The underlying case arose from a construction site accident during the renovation of a Kroger store. Martin was the general contractor and Cimarron was a subcontractor for the project. A Cimarron employee, Timothy Zahn, was injured when he fell from scaffolding while installing drywall. Zahn brought a negligence action against the Kroger Company of Michigan and Martin. Kroger filed a third-party action against Martin for indemnification. Martin, in turn, filed a third-party action against Cimarron seeking indemnification pursuant to their subcontract agreement. Martin entered into a settlement with Zahn for $225,000 and resolved claims for indemnification with Kroger for $12,489.45. Martin then asked the trial court to enforce the terms of the indemnification clause in the subcontract agreement with Cimarron.

This appeal addresses the indemnification clauses in that subcontract. The pertinent contract clauses provide:

> 3. . . . By acceptance of this subcontract, Subcontractor assumes every duty imposed upon Martin, to the extent related to the subject matter of this Subcontract.

> * * *

3

17. Indemnity – To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold Martin, the Owner and Others (required by the Contract Documents) harmless from all claims for bodily injury and property damage that may arise from the performance of the Subcontract work to the extent of the negligence attributed to such acts or omissions by Subcontractor, or anyone employed or contracted by Subcontractor for whose acts any of them may be liable. In no event shall the indemnity contained herein be deemed to cover damages arising exclusively through the negligence of Martin.

The trial court conducted a bench trial on Martin's third-party action for express contractual indemnity. The court ruled that Cimarron's negligence was greater, as it had constructed the scaffolding and ordered Zahn to work on it even after he had protested that it was unsafe. The court ruled that Martin was also negligent, but to a lesser degree, for failing to inspect the scaffolding for safety rails or to take further steps to make the workplace safer for Zahn. The trial court concluded that Martin's percentage share of the negligence was 20 percent and that Cimarron was 80 percent at fault. The trial court held that, pursuant to the terms of the contract, Cimarron was not required to indemnify Martin to the extent of Martin's negligence, but was required to reimburse 80 percent of the settlement amounts back to Martin for its own share of the negligence.

We first address whether MCL 600.2956 renders such indemnification clauses effectively unenforceable. Cimarron contends that the abolition of joint and several liability, as set forth in MCL 600.2956, requires an analysis beyond the language of the contract itself. It proffers that it cannot be held liable for Martin's negligence because MCL 600.2956 requires that parties pay only for their

4

own pro rata share of liability. It further contends that MCL 600.2956 limits indemnification clauses by operation of law and that we are to disregard the actual language of the contract. We find these arguments unpersuasive. Here, Cimarron voluntarily entered into an agreement with another business entity. These are business entities with equal bargaining power. The parties came to a mutually acceptable agreement to govern liability for construction site injuries. Such agreements are common in the construction industry. Importantly, neither party claims that the pertinent contractual clauses are ambiguous. To adopt the position that MCL 600.2956 renders express contractual indemnification clauses unenforceable would require that we negate the parties' contract. We find no language in the statute, nor any compelling public policy, that would require us to do so.

The Court of Appeals addressed the identical legal challenge in reviewing a substantially similar express indemnification clause governing a construction site accident. See *Essell v George W Auch Co.*[6] That Court noted, "Although novel, the argument is also contrived because it selectively implicates the underlying negligence complaint and ignores the substance of the cross-complaint, an action based in contract."[7] The Court opined:

---

[6] *Essell v George W Auch Co,* unpublished opinion per curiam of the Court of Appeals, issued February 24, 2004 (Docket No. 240940).

[7] *Id*. at 4.

5

However, defendants ignores [sic] the first sentence of MCL 600.2956, that limits its application to "an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death . . . [.]"  While the underlying complaint by Essel [sic] is a tort action seeking damages for personal injury, the action at issue in this cross-complaint is an action based on contract theory.  Plaintiff's lawsuit seeks reimbursement for monies paid, not for its own personal injury, property damage, or wrongful death.  There is no indication that the Legislature, by amending MCL 600.2956, sought to limit or eliminate the parties' freedom of contract to allocate damages should a breach of contractual duty occur.  Indeed, MCL 600.2956 contains the proviso that it applies to tort actions or actions where the legal theory results in damages for personal injury, property damage, or wrongful death. *ISB, supra*.  If the Legislature had intended to include all other actions, including contract actions, it expressly would have done so and would not have placed any restricting language within the statute.  [*Id*. at 5.]

We find the above analysis persuasive and hold that MCL 600.2956 does not apply to contract actions, and the language chosen by the parties as contained in the contract is controlling.[8]

We must next determine whether the indemnification clause the parties used was properly interpreted.  An indemnity contract is to be construed in the same fashion as other contracts.  *Hubbell, Roth & Clark, Inc v Jay Dee*

---

[8] Cimarron also urges us to interpret this contract in light of the legislative change in the law concerning joint and several liability.  It contends that these clauses were commonly used in contracts drafted before the enactment of the current MCL 600.2956, and that these clauses simply continue to be part of form contracts.  However, we note that this agreement was drafted and entered into long after the abolition of joint and several liability, and neither party has alleged that this contract or the pertinent clauses are ambiguous.  We cannot assume that the parties in this case, given their equal bargaining power, agreed to a clause that has no meaning or that we should ignore it because the language was part of a form contract.

*Contractors, Inc*, 249 Mich App 288, 291; 642 NW2d 700 (2002); *Zurich Ins Co v CCR & Co (On Rehearing),* 226 Mich App 599, 603; 576 NW2d 392 (1997); *Triple E Produce Corp v Mastronardi Produce, Ltd,* 209 Mich App 165, 172; 530 NW2d 772 (1995). The extent of the duty must be determined from the language of the contract, itself. *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 353; 686 NW2d 756 (2004). All contracts, including indemnity contracts should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give a reasonable meaning to all of its provisions. *Klever v Klever*, 333 Mich 179, 186; 52 NW2d 653 (1952); *MSI Constr Managers, Inc v Corvo Iron Works, Inc*, 208 Mich App 340, 343; 527 NW2d 79 (1995). This Court has generally observed that if the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning. *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). Courts may not make a new contract for parties under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties. *Lintern v Michigan Mut Liability Co*, 328 Mich 1, 4; 43 NW2d 42 (1950).

Here, the contract clearly preserved Martin's right to seek indemnification from Cimarron for any injury arising from Cimarron's negligence. The trial court adhered to the terms of the contract and made a determination of the respective negligence of the two parties. The court ruled that Cimarron was negligent and its pro rata share was 80 percent. The contract terms expressly provide for

7

indemnification under these circumstances. The court ordered Cimarron to indemnify Martin for 80 percent of the settlement of the claim. The Court of Appeals affirmed. We find no error in the lower courts' interpretation of the contract, and the judgment should stand.

Finally, we address whether the exclusive remedy provision of the WDCA[9] precludes enforcement of an indemnification contract when the injured party is the employee of the entity being required to pay the indemnification amount. Cimarron suggests that an employer cannot be required to assume liability for a particular type of damages for negligence from which it is otherwise shielded as a

---

[9] MCL 418.131 provides:

> (1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

> (2) As used in this section and [MCL 418.827], "employee" includes the person injured, his or her personal representatives, and any other person to whom a claim accrues by reason of the injury to, or death of, the employee, and "employer" includes the employer's insurer and a service agent to a self-insured employer insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing worker's compensation insurance or incident to a self-insured employer's liability servicing contract.

matter of law. Although Cimarron cannot be held directly liable for negligence by its own employee by virtue of the WDCA, nothing in contract law precludes an employer from voluntarily assuming liability for negligence through a contractual arrangement. Similarly, nothing in the WDCA precludes parties from entering into such an agreement. Accordingly, we conclude that the contract language controls, and we affirm the judgment of the Court of Appeals.

Diane M. Hathaway
Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

9

S T A T E OF M I C H I G A N

SUPREME COURT

TIMOTHY ZAHN,

      Plaintiff,

v                                             No. 136382

KROGER COMPANY OF MICHIGAN,

      Defendant/Cross-Plaintiff-
      Appellee,
and

F.H. MARTIN CONSTRUCTION
      COMPANY,

      Defendant/Cross-
      Defendant/Third-Party
      Plaintiff-Appellee,

and

CIMARRON SERVICES, INC.,

      Third-Party Defendant-
      Appellant.

_____

YOUNG, J. (*concurring*). I concur in Justice Markman's opinion. I write separately to note that stability in the law contributes to stability in our society. This is the essence of the rule of law—that controversies are decided on the basis of law, not the identity of the disputing parties. This is why the symbol of justice is blindfolded, because she is uninterested in the identity of the parties but concerned only with the legal merit of their cause. This is also what distinguishes

the justice systems of great democracies from those of nations where who one is matters more than the law.

In the grand scheme of things, it might be hard to understand why this great principle matters. But whenever one buys property or enters into a contractual relationship, one does so with the expectation that the rules of law that govern now will not be summarily changed in the future. So, in commercial matters, no less than in other spheres of life, it is important to know in advance what rules will govern in the future and this is especially true of contracts.

When judges desire to assert the power to control the outcomes of controversies—to ensure that favored parties such as the "little guy" win whatever the law—commitment to fixed rules of law becomes an obstacle and thus an inconvenience that must be the first thing cast aside in aid of such power. In the place of announced rules of law are substituted myriad judicial dodges that allow a judge to manipulate outcomes after the fact. Thus, in contractual matters, the willful judge must negate fixed rules of contract in favor of ones that permit after-the-fact "adjustments." These dodges are usually announced as serving a principle of "equity" but are usually no more than a mask that hides the judicial desire to alter outcomes for favored parties.

However well intentioned, I believe that this Court is moving away from defending the rule of law (applying rules known in advance to existing controversies) to a system in which a party's status is what becomes important to

2

litigation outcomes. For all the reasons stated in Justice Markman's partial concurrence, this case represents a small but significant step in that direction.

Robert P. Young, Jr.
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

TIMOTHY ZAHN,

        Plaintiff,

v                                         No. 136382

KROGER COMPANY OF MICHIGAN,

        Defendant/Cross-Plaintiff-Appellee,

and

F.H. MARTIN CONSTRUCTION COMPANY,

        Defendant/Cross-Defendant/
        Third-Party Plaintiff-Appellee,

and

CIMARRON SERVICES, INC.,

        Third-Party Defendant-Appellant.

---

MARKMAN, J. (*concurring*).  In this straightforward contract case, one that ought to be the subject of consensus on this Court, the majority needlessly introduces uncertainty and doubt into the law of our state.  By its gratuitous observation that the parties to the contract here are "business entities with equal bargaining power," *ante* at 5, the majority suggests that this circumstance is somehow relevant to its conclusion that the contract ought to be read in accordance with its language.  Neither of the parties to this contract has raised any argument concerning their respective "bargaining powers."

After a decade in which this Court has sought to bring a greater consistency and certainty to the law of this state by a disciplined interpretation of statutes, ordinances, deeds, and contracts, and by clear judicial statements concerning the rights and obligations of individuals and businesses, the majority seems bent on restoring a legal regime in which the stability and predictability of the law is perpetually subject to creative legal arguments.

The majority offers no explanation of why it is necessary to remark upon the allegedly "equal bargaining power" of the parties in this case. What, for example, would be different in the majority's analysis if one of the parties to this dispute had *not* been a "business entity"? What would be different in this analysis if the parties had *not* been of "equal bargaining power"? Indeed, what does it mean to *be* of "equal bargaining power," and how do we *calculate* such "equality"? Where does such a requirement of "equality" *derive* from in the law of this state? Through what means can a party with "unequal" bargaining power ensure that its contract *is* binding on another party?

While the majority provides no guidance in answering these questions, one can hardly doubt that it will become an increasingly common aspect of the appellate landscape in contract cases in Michigan for one party-- generally the party that finds the language of the contract to be inhospitable to its claims-- to offer its own answers. And as things tend to go, appellate courts will increasingly come to articulate vague rules, fraught with exceptions and exceptions to exceptions, "totality of circumstances" analyses, and multi-part tests for

ascertaining what constitutes "equal bargaining power." And eventually in place of a rule of law in which the words of contracts are taken seriously, and in which parties to contract disputes can understand their rights and responsibilities, and in which parties may even find it possible to understand these rights and responsibilities without having to avail themselves of a lawyer, the majority will leave in its wake a legacy of more litigation, more appeals, higher legal costs, and a diminished role for private parties, with a concomitantly enhanced role for judges, in resolving contract disputes. But I suppose this is the very point. When our new Chief Justice promises to "undo . . . the damage" she asserts has been done by this Court over the past decade, Detroit Free Press, December 10, 2008, at 2A, I would venture that the respect this Court has accorded during this time to competent persons to enter into contracts of their own choosing constitutes one aspect of such "damage." See also, e.g., *Genesee Foods Services, Inc v Meadowbrook, Inc*, ___ Mich ___ (2009), order of the Supreme Court, entered March 20, 2009 (Docket No. 137526).

It is well established in Michigan that "'competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'" *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002), quoting *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 357; 51 S Ct 476; 75 L Ed 1112 (1931); see also *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 319; 550 NW2d 228 (1996) (discussing the "'fundamental policy of freedom of contract'" under which

3

"'parties are generally free to agree to whatever specific rules they like'"). Rather than merely reiterating this law and resolving the instant controversy, the majority introduces a new murkiness into a realm of law in which clarity and certainty are essential to everyday business relationships. While the present controversy may not seem of great consequence beyond the parties, it is entirely typical of thousands of such contracts freely entered into by individuals and businesses throughout this state each day. And it is essential to the rule of law that these contracts be respected and that this Court provide the leadership and direction to ensure that this takes place. Today's decision moves in exactly the wrong direction in that regard.

The majority reaches the correct result and applies the correct analysis. It is simply not content to end its opinion where it ought, choosing instead to invite new litigation by eroding clear-cut principles of contract law.[1] I would affirm, but

---

[1] By its equally gratuitous references to the absence of "ambiguous" language in this contract, and the absence of "compelling public policy" that "would require that we negate the parties' contract," *ante* at 5, the majority also, I fear, foreshadows future approaches by which traditional rules of freedom of contract can be disregarded where a contract is viewed disapprovingly by a majority of this Court. See generally *Klapp v United Ins Group Agency, Inc*, 468 Mich 459; 663 NW2d 447 (2003); *Federated Publications, Inc v City of Lansing*, 467 Mich 98; 649 NW2d 383 (2002); *Terrien, supra*.

4

without the majority's unsettling language concerning the "equal bargaining power" of the parties.

Stephen J. Markman
Maura D. Corrigan
Robert P. Young, Jr.