# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA SOLIS and BENJAMIN SOLIS,

UNPUBLISHED
July 26, 2016

Plaintiffs,

v

No. 326259
Wayne Circuit Court
LC No. 12-004379-NO

THE KROGER CO. OF MICHIGAN,

Defendant/Third-Party Plaintiff-
Appellee,

and

THE GREENER SIDE, INC.,

Third-Party Defendant-Appellant.

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

In this indemnification dispute, third-party defendant, The Greener Side, Inc., appeals by right the trial court's final order resolving the underlying litigation. On appeal, The Greener Side argues that the trial court erred when it granted the motion for summary disposition by third-party plaintiff, The Kroger Co. of Michigan's (Kroger), on reconsideration. Because we conclude that the trial court did not err when it determined that The Greener Side had an obligation to indemnify Kroger under the relevant agreement, we affirm.

## I. BASIC FACTS

In December 2011, Patricia Solis slipped and fell on an isolated patch of ice in the parking lot of a Kroger store. Solis and her husband sued Kroger for damages arising from Solis' fall in March 2012. Kroger then sued its snow and ice removal contractor, Progressive Irrigation, Inc. (Progressive), as well as Progressive's subcontractor, The Greener Side, in a third-party complaint. The trial court dismissed Kroger's complaint against Progressive after Progressive agreed to assume Kroger's defense and indemnify it against the claims. The Greener Side acknowledged the subcontract, but denied that it had an obligation to indemnify Kroger or otherwise breached the subcontract.

-1-

In April 2013, The Greener Side moved for summary disposition of Kroger's third-party claim. It argued that it only had an obligation to defend and indemnify Kroger under the agreement if the underlying loss were caused by its acts or omissions under the agreement to provide snow and ice removal services. It presented evidence that there was no snow or ice event or call that obligated it to provide snow or ice removal services on the day of Solis' fall. From this, it maintained, its failure to perform snow or ice removal services could have no causal connection to the events giving rise to Solis' suit.

In May 2013, Kroger responded and also moved for summary disposition. It argued that the indemnification provisions in the agreement were broad and required The Greener Side to indemnify and defend if the underlying claim involved The Greener Side's work under the contract without regard to whether its acts or omissions actually caused the injuries at issue.

The trial court initially granted The Greener Side's motion, but vacated its decision and granted Kroger's motion on reconsideration. Kroger ultimately settled with Solis and her husband. The Greener Side now appeals in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dancey v Travelers Property Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010). This Court also reviews de novo the proper interpretation of a contractual agreement. *Rory v Contl Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. ANALYSIS

As an initial matter, in granting Kroger's motion for summary disposition on reconsideration, the trial court adopted the "reasons stated in [Kroger's] motion for reconsideration and brief in support." Thus, to the extent that the trial court adopted Kroger's various theories pertaining to the obligations or liability of The Greener Side's general liability insurer, Secura Insurance, the court erred. Michigan courts "may not make '[a]n adjudication affecting' the rights of a person or entity not a party to the case." *Shouneyia v Shouneyia*, 291 Mich App 318, 323; 807 NW2d 48 (2011) (citations omitted). Nevertheless, we conclude that the trial court came to the correct result as to The Greener Side's obligations under the indemnification agreement.

Indemnity contracts are construed in the same manner as any other contract. *Badiee v Brighton Area Schools*, 265 Mich App 343, 351; 695 NW2d 521 (2005). The language of the contract sets the extent of the indemnitor's duty. *Zahn v Kroger Co of Mich*, 483 Mich 34, 40; 764 NW2d 207 (2009). "This Court has generally observed that if the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning." *Id*. at 41. Moreover, courts are not permitted to make a new contract for the parties "under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties." *Id.* The threshold question in any indemnification action is whether the indemnity clause applies to the underlying claim at issue. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich

161, 174; 848 NW2d 95 (2014). To answer this question, this court conducts a "straightforward analysis of the facts and the contract terms." *Id*. (quotation marks and citation omitted).

In paragraph nine of the subcontract, The Greener Side agreed to defend and indemnify Progressive and the owner—logically, the owner of the underlying property—for any claim connected with its work under the agreement:

9. INSURANCE AND INDEMNIFICATION: Subcontractor takes the entire risk of any and all personal injuries or property damage arising out of or in any way connected with the work of Subcontractor. To the fullest extent permissible by law, Subcontractor shall indemnify, hold harmless and defend Progressive Irrigation, Inc. and Owner, their employees, agents and representatives from and against any and all damages, expenses, claims and suits of whatever nature resulting from damages or injuries, including death, to any property or persons, caused by, arising out of, or connected with any action, omission or operation under this contract or in any connection with work attributable to Subcontractor, any Subcontractor of Subcontractor, and any of their respective employees, agents or representatives. . . .

The Greener Side argues that this indemnification provision does not apply because it had no obligation to perform snow and ice removal services on the day of Solis' fall and, therefore, there was no "action, omission, or operation under this [sub]contract" on which to premise liability. Stated another way, The Greener Side argues that the underlying injuries must be causally related to some act, omission, or operation by it before it will be obligated to defend or indemnify. The indemnification provision is not, however, ambiguous and plainly does not require proof that the Greener Side's acts or omission caused the harm at issue.

The Greener Side agreed to take "the entire risk of any and all personal injuries or property damage arising out of or *in any way connected*" with its performance under the contract. To that end, it agreed to "indemnify, hold harmless and defend" Progressive and Kroger "from and against any and all damages, expenses, claims and suits of whatever nature" if the claims or suits were "resulting from damages or injuries, including death, to any property or persons, caused by, arising out of, or connected with any action, omission or operation under this contract or in any connection with work attributable to [The Greener Side] . . . ." The terms require The Greener Side to defend and indemnify Kroger, in relevant part, if 1) there is a claim or suit, 2) the claim or suit resulted from injuries to any property or person, and 3) the injuries were caused by, arose out of, or were *connected with* any action, omission or operation under the subcontract or had "*any connection*" with The Greener Side's work. Because The Greener Side agreed to defend and indemnify Kroger if the underlying claim had any connection with its acts, omissions, or operations, or any connection to its work under the subcontract, Kroger did not have to show that the underlying claim had merit or that it was in fact caused by The Greener Side's acts or omissions; it was enough to show that the underlying claim had some "connection" –however minimal—to the work that The Greener Side performed or was to perform under the subcontract.

-3-

In this case, the undisputed evidence showed that the claims by Solis and her husband had a connection to The Greener Side's work. Solis and her husband claimed that they suffered damages after Solis encountered ice in Kroger's parking lot, slipped, fell, and suffered an injury. It was also undisputed that, under the terms of the subcontract, The Greener Side had the obligation to remove snow and ice in the parking lot during the days preceding and up to the day of Solis' fall—that is, The Greener Side's performance (or failure to perform) under the contract plainly encompassed ice hazards in the parking lot. The claims by Solis and her husband were, accordingly, connected to The Greener Side's actions, omissions, or operations under the terms of the subcontract because the claims involved injuries connected to the failure to prevent or remove ice from Kroger's parking lot; it does not matter that The Greener Side may have fully and properly performed under the agreement and may not in fact have caused the ice to persist or form, or that its performance or failure to perform might not have caused Solis' fall. Because this indemnification provision is unambiguous, this Court must enforce it as written. *Rory*, 473 Mich at 470.

Under the terms of the indemnification provision, The Greener Side had an obligation to defend and indemnify Kroger against the claims by Solis and her husband. Consequently, the trial court did not err when it granted Kroger's motion for summary disposition on reconsideration. Given our resolution of this issue, we decline to consider The Greener Side's remaining claims of error.

Affirmed. As the prevailing party, Kroger may tax its costs. MCR 2.719(A).

/s/ Michael J. Riordan
/s/ Michael J. Kelly

-4-