*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

FCA US, LLC,

       Plaintiff-Appellant,

v

FAURECIA AUTOMOTIVE SEATING, LLC,

       Defendant/Third-Party Plaintiff-
       Appellee,

and

ADIENT US, LLC,

       Third-Party Defendant-Appellee.

UNPUBLISHED
March 31, 2022

No. 356009
Oakland Circuit Court
LC No. 2019-174160-CB

---

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff FCA US, LLC ("FCA"), filed this indemnification action against defendant Faurecia Automotive Seating, LLC ("Faurecia"), after FCA was sued in two separate lawsuits in Texas involving claims that seats on FCA's automobiles were defective. Faurecia had supplied the completed seats to FCA. Faurecia filed a third-party complaint against Adient US, LLC ("Adient"), which had supplied the seat structure for the seats. FCA and Faurecia both filed motions for summary disposition under MCR 2.116(C)(10) on the issue of Faurecia's obligation to indemnify plaintiff. The trial court denied FCA's motion and granted Faurecia's motion in relation to one of the Texas cases (the "*Gutierrez* lawsuit"), and ruled that there were issues of fact that precluded summary disposition for either party in relation to the second Texas case (the *Lewis* lawsuit). Faurecia thereafter filed a renewed motion for summary disposition related to the *Lewis* lawsuit, which the trial court granted. FCA now appeals as of right, challenging the dismissal of its indemnification claims against Faurecia in relation to both the *Gutierrez* and *Lewis* lawsuits. For the reasons stated in this opinion, we affirm the grant of summary disposition to Faurecia.

-1-

## I. BACKGROUND

FCA manufactures various lines of vehicles, including Dodge Avengers. In 2003, FCA contracted with Adient to work on the design and development of a common seat structure, i.e., "SCS-II," that would be used in all of FCA's vehicles.[1] Around the same time, FCA contracted with Faurecia to manufacture the complete seats to be used in Dodge Avengers, i.e., "JS Seat Set Complete," which included adding foam, trim, seatbelts, head restraints, and similar items to the seat structure designed by Adient. The Dodge Avenger launched in 2010.

FCA's complaint for indemnification alleged that the *Gutierrez* and *Lewis* lawsuits were filed against it in Texas for injuries allegedly caused by defects in the driver's seat of a 2014 Dodge Avenger and a 2013 Dodge Avenger, respectively. In each of the underlying Texas cases, the driver's seat reclined nearly fully backwards after a high-speed rear-end collision, causing catastrophic injury to the driver. FCA alleged that Faurecia, as the supplier of the completed seats, was required to indemnify and defend FCA in relation to both lawsuits pursuant to an indemnification agreement in the parties' contract. Faurecia had rejected FCA's request for indemnification in the *Gutierrez* lawsuit, which FCA settled in May 2019, and refused to respond to FCA's tender letter with regard to the *Lewis* litigation, which is ongoing.

FCA moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact regarding Faurecia's liability for indemnification in relation to both underlying lawsuits. Faurecia filed its own motion for summary disposition, arguing that it was not contractually liable for indemnification because the alleged seat defects involved component parts made by Adient under FCA's guidance and specifications. Faurecia acknowledged that it supplied the completed seats used in the vehicles, but claimed that Adient designed the seat structure, including the components that allegedly caused the injuries in the underlying lawsuits. Therefore, Faurecia argued, the indemnification clause in its agreement with FCA was not triggered with regard to the Texas lawsuits.

The trial court agreed with Faurecia with respect to the *Gutierrez* lawsuit because the alleged injuries in that case were not related to Faurecia's work, and Adient was not a subcontractor for Faurecia. However, the trial court found that a question of fact existed regarding Faurecia's indemnification obligation in the *Lewis* lawsuit because an engineer for Adient, William Tighe, claimed that Faurecia made changes to the design of the seat's lumbar suspension mat. Faurecia later filed a renewed motion for summary disposition because that theory was not actually raised by the plaintiff in the *Lewis* lawsuit. Further, FCA had named Faurecia as a "responsible third party" in the *Lewis* lawsuit. Faurecia argued that, under Texas law, this designation prevented FCA from being held liable for any acts by Faurecia, thereby precluding the indemnification clause in the parties' agreement from being triggered. The trial court agreed and granted Faurecia's renewed motion for summary disposition under MCR 2.116(C)(10).

---

[1] The agreement was actually between Chrysler (FCA's predecessor) and Johnson Controls International (Adient's predecessor). For simplicity, we refer to FCA and Adient rather than their predecessors.

## II. ANALYSIS

FCA argues that the trial court erred by granting Faurecia's motion for summary disposition with regard to the *Gutierrez* and *Lewis* lawsuits because there is at least a question fact whether the situation of either lawsuit is subject to the parties' indemnification agreement. We disagree.[2]

"All contracts, including indemnity contracts, should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give a reasonable meaning to all of its provisions." *Zahn v Kroger Co of Mich*, 483 Mich 34, 40-41; 764 NW2d 207 (2009). "The extent of the duty must be determined from the language of the contract, itself." *Id*. at 40. A court may not rewrite unambiguous contract language. *Id*. "[T]he threshold question whether a contract's indemnity clause applies to a set of facts [is determined] by a 'straightforward analysis of the facts and the contract terms.' " *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014), quoting *Grand Trunk W RR, Inc v Auto Warehousing Co*, 262 Mich App 345, 356-357; 686 NW2d 756 (2004).[3]

The parties' indemnification agreement contained in the purchase orders for the JS Seat Sets provides in pertinent part:

> (b) Indemnification. [Faurecia] will defend, indemnify, and hold [FCA]] and its subsidiaries, including their respective employees, officers, directors, agents or representatives harmless against all claims, suits, actions or proceedings ("Claims") and pay (i) all liabilities, losses, damages (including without limitation judgments, amounts paid in settlement and other recoveries), (ii) fees and expenses (including without limitation fees of counsel and experts) and (iii) other costs

---

[2] We review de novo a trial court's decision on a motion for summary disposition. See *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted Faurecia's motion for summary disposition under MCR 2.116(C)(10), which tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).

[3] We recognize that there has been a settlement in *Gutierrez* while *Lewis* remains pending. In *Grand Trunk W RR, Inc*, 262 Mich App 345, we explained that a settling indemnitee need only show "potential liability" as opposed to "actual liability" if the indemnitor had notice of the claim and refused to defend. *Id*. at 355. However, even under this standard, the indemnitee must show that the fact situation of the original complaint is covered by the indemnity contract. See *id*. at 356-357. For the reasons discussed in this opinion, there is not a genuine issue of material fact that the fact situation in either Texas lawsuit is covered by the indemnification contract.

(collectively, "Expenses") in connection with any breach or nonperformance by Seller of the Order, *or for injury or death of any person and damage or loss of any property allegedly or actually resulting from or arising out of any act, omission or negligent work of Seller or its employees, agents, or subcontractors in connection with performing the Order . . . .*  [Emphasis added.]

Thus, indemnification is limited to claims arising from (1) "any breach or nonperformance by [Faurecia] of the Order," or (2) "any act, omission or negligent work of [Faurecia] or its employees, agents, or subcontractors in connection with performing the Order."  At issue here is whether Gutierrez's or Lewis's injuries were caused or allegedly caused by any act, omission, or negligence of Faurecia or its employees, agents, or subcontractors.

As an initial matter, we agree with FCA that *Gutierrez* and *Lewis* concern the same alleged defect in the seating system.  The amended complaint in the *Gutierrez* lawsuit alleged that Gutierrez's injuries were caused by a design or manufacturing defect in the seat.  Specifically, the amended complaint alleged that "[t]he front seat of the Vehicle in Question was designed in such a way that the seatback would yield in the event of a rear-impact collision."  The *Gutierrez* complaint also alleged a design defect claim against Adient's predecessor, Johnson Controls International.  Similarly, the complaint in the *Lewis* alleged in pertinent part that the vehicle in question "contained a defect in the design of the occupant restraint system, of which the driver's seat assembly is an integral part, which failed to restrain Mr. Lewis in the driver's seat area during the subject crash."  An amended complaint added a claim against Johnson Controls.

In both *Gutierrez* and *Lewis*, the plaintiff retained the same expert, mechanical engineer Steven Meyer, to inspect the respective vehicle.  Meyer's reports in each case are virtually identical as to the purported defect that caused the driver's seat to nearly fully recline in the rear-end collision.  Meyer concluded in part:

> [T]he recliners mechanically and catastrophically failed due to unintended actuation of the recliners via occupant loading to the connector rod.  Once failure of the recliners occurred, the seat reclined to its near full recline position without substantial energy absorption, and as such, failed to provide any further occupant ride down to [Gutierrez/Lewis.]
>
> * * *
>
> The driver's seat failure in the subject vehicle was due to and/or associated with a failure of the recliner mechanisms to remain engaged.

Meyer stated that testing by Chrysler (FCA's predecessor) did or should have put it on notice that the seat was defective.  Meyer discussed the testing performed by Chrysler and Johnson Controls, which identified defects during testing of the seat design in 2008.  In his report, Meyer did not

attribute the seat's failure to Faurecia's work. Thus, through their expert, the plaintiffs in both *Gutierrez* and *Lewis* allege the same defect in the SCS-II seat structure.[4]

FCA first takes issue with the trial court's finding that Faurecia was not involved in the design of the seat structure. The court ruled that the evidence showed that Adient provided the seat structure to Faurecia, which merely incorporated the seat structure into the completed seat.

There is no dispute that Adient designed, tested and manufactured the seat structure. FCA argues, however, that the design drawings designated Faurecia as the "original designer" and "original checker" for all seating subcomponents, including the seat structure. FCA also asserts that as part of the design drawings Faurecia agreed to comply with certain engineering standards regarding the seat's performance, including the seat structure. FCA concludes from these documents that Faurecia adopted Adient's seat structure and assumed responsibility for it. Faurecia maintains that FCA reads too much into these initial documents and there is no evidence that it agreed to be bound by Adient's seat structure or otherwise adopted it.

However, we need not resolve this issue because even if we were to conclude that Faurecia assumed responsibility for the seat structure or agreed to comply with engineering standards regarding the seat structure, that has no bearing on whether the fact situations of the underlying lawsuits come within the indemnification clause. This appeal concerns a narrow question, which is whether the injuries at issue in the underlying lawsuits resulted from "any act, omission or negligent work" of Faurecia or its subcontractor such that the indemnification agreement applies. General assertions regarding Faurecia's responsibility for the seat structure do not establish that FCA is entitled to indemnification. Rather, FCA must identify an act, omission or negligent work by Faurecia or its subcontractor relating to the alleged defect to trigger the indemnification agreement.

FCA also contends that Faurecia, along with other "Tier I" suppliers, were involved in the design of the common seat structure. But according to the deposition testimony of those involved in the design process for the seat structure, Faurecia, at most, provided input on the design, but it did not have design responsibility. For example, Patrick Stanton, a senior program manager for Adient, testified at his deposition that Faurecia could not make a change to the seat structure without FCA's approval. Stanton also testified that Adient was required to design the seat structure to meet certain performance standards and specifications from FCA, not Faurecia. Thus, although other seat designers, including Faurecia, were consulted and had input into design issues, the design responsibility for the seat structure was solely with Adient. Further, FCA does not assert

---

[4] FCA maintains that Meyer's reports concerned the performance of the JS seating system as a whole, not merely the seat structure. The isolated statement in Meyer's reports that FCA quotes in support of this position was made in the context of a discussion of safer alternative seat designs. First, it is not clear to us that Meyer is referring to non-structural changes to the seat design. Regardless, immediately before the statement relied on by FCA, Meyer reiterates that the cause of the Texas plaintiffs' injuries was a recliner mechanism failure in the seat structure.

that any suggestion or change request made by Faurecia regarding the seat structure related to the alleged defect at issue in *Gutierrez* and *Lewis*.

FCA also argues that the trial court erroneously held that Faurecia had no testing responsibility for the seat structure. Both Adient's and Faurecia's engineers described Adient performing its own testing on the seat structure. Specifically, Adient performed the testing to adequately ensure that the recliners did not unintentionally actuate in the event of a rear-end collision. It was also established that Faurecia was not duplicating Adient's testing of the seat structure alone. Thus, even though Faurecia was responsible for testing the completed seat, there is no evidence that Faurecia was responsible for testing the seat structure. Moreover, FCA has not shown that testing of the completed seat was somehow deficient or would have revealed the defect at issue in *Gutierrez* and *Lewis*. Because the evidence showed that Adient was responsible for testing the seat structure, and FCA has not shown that any testing by Faurecia should have led to discovery of the claimed defect at issue, the trial court did not err by granting summary disposition for Faurecia on the basis that there was no genuine issue of material fact regarding its responsibility for testing the defective parts at issue.

FCA also argues that the trial court erroneously held that the evidence showed that Faurecia did not have authority to modify the seat structure. To support its argument, FCA first cites two instances in which Faurecia requested changes to the seat structure in 2007 involving the deletion of the suspension springs and moving the TPS shunt bracket. However, there is no evidence that these changes related to the allegations made in *Gutierrez* or *Lewis*. Further, as discussed, the fact that Faurecia requested changes to the seat structure design does not demonstrate that Faurecia had design control. Rather, this evidence was consistent with the process by which Tier I contractors such as Faurecia could provide input on seating designs, but Adient was still responsible for the final design, which was subject to FCA's approval.

FCA also argues that there was evidence that Faurecia made unilateral changes to the lumbar support in the seat structure. The trial court initially ruled that summary disposition was inappropriate in the *Lewis* litigation because there was evidence related to Faurecia's design work on the lumbar suspension. The court stated:

> In contrast, Plaintiff presents the expert report of William R. Tighe, P.E., Adient US LLC's expert in the Lewis lawsuit, who stated that "starting in 2011, with the [sic] Faurecia introduced softer lumbar suspension and other changes noted above, the Faurecia supplied Dodge Avenger and Chrysler 200 seats featured substantial changes and alterations." See Exhibit E of Plaintiff's Response. The Court notes for the record that it has reviewed Mr. Tighe's report, which has been filed under seal.
>
> With regard to Plaintiff's indemnification claim against Defendant as it relates to the Lewis lawsuit, the Court has reviewed the evidence presented, including, but not limited to, the expert reports of both Mr. Meyer and Mr. Tighe, and finds that there are sufficient questions concerning the underlying, material facts involved in the Lewis lawsuit such that summary disposition is not appropriate at this time.

In the *Lewis* litigation,[5] an opinion letter from Tighe, who works as an engineer for Adient, was produced. In this letter, dated June 25, 2020, Tighe explained that he worked for Johnson Controls for many years and continued to work for Adient designing seat structures. Tighe primarily defended Adient's work and placed much of the blame for inadequate testing of the finished seat product on FCA. But Tighe also asserted that reported problems with the seat structure did not occur until Faurecia began to make changes to the seat structure in 2011. Tighe asserted that, before then, seat structures designed by Johnson Controls/Adient were not found to be defective. According to Tighe, the seats at issue in *Lewis*, *Gutierrez*, and another case all contained redesigned lumbar supports that Faurecia incorporated into the seats it supplied to FCA. Tighe then detailed the specific changes that Faurecia made to the lumbar suspension and concluded that the Faurecia-supplied seats contained substantial changes and alterations to the seat structure originally designed by Johnson Controls years earlier.

However, in neither *Gutierrez* nor *Lewis* did the plaintiff allege that the seat failed because of Faurecia's changes to the lumbar suspension; indeed, Faurecia is not a defendant in either lawsuit.[6] Again, the plaintiffs in the Texas suits retained the same expert, Meyer, who did not attribute the cause of injuries in either case to the lumbar suspension designed by Faurecia. Nor is there is any other evidence attributing the recliner mechanism failure to the changes made by Faurecia. Although Tighe attempts to insinuate that these changes were the cause of the recliner mechanism defects, he never expressly makes that assertion, let alone provides a basis to accept it. And in the absence of evidence tying Faurecia's modifications to the alleged defect, it is mere speculation that the recliner mechanism failure resulted from these changes. See *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003) ("Mere speculation or conjecture is insufficient to establish reasonable inferences of causation.").

In sum, viewing the evidence in a light most favorable to FCA,[7] there is not a genuine issue of material fact that the injuries in underlying lawsuits resulted or allegedly resulted from an act,

---

[5] We agree with FCA that, for purposes of this indemnification action, Tighe's report should also be considered with respect to the *Gutierrez* lawsuit. The pertinent part of Tighe's report concerns both *Gutierrez* and *Lewis* and thus is equally relevant to both cases. Although the report was authored for purposes of the *Lewis* litigation after the *Gutierrez* lawsuit settled, it is unclear why this evidence should not be considered with respect to *Gutierrez* in this indemnification action pertaining to both lawsuits.

[6] A third amended petition in *Lewis* that would have added Faurecia as a defendant was never actually filed.

[7] FCA argues that the trial court improperly weighed the evidence and evaluated credibility when granting summary disposition for Faurecia. FCA also contends that the trial court failed to consider all of the submitted evidence, including design documents and other technical information. We disagree with FCA's characterizations of the trial court's ruling. In any event, on de novo review, we conclude that Faurecia was entitled to summary disposition on FCA's indemnification claims with respect to both underlying lawsuits for the reasons stated in this opinion.

omission, or negligent work of Faurecia. The trial court did not err by granting summary disposition for Faurecia with regard to FCA's claim for indemnification with respect to the *Gutierrez* and *Lewis* lawsuits.[8]

FCA also argues that to the extent that the plaintiffs' injuries in the underlying lawsuits arose from an act, omission, or negligence of Adient, Faurecia is liable for indemnification to FCA because Adient was Faurecia's subcontractor. We disagree.

As FCA correctly observes, the scope of the indemnification provision in the parties' agreement extends not only to losses arising from acts, omissions, or negligence by Faurecia, but also any losses arising from acts, omissions, or negligence by Faurecia's "subcontractors in connection with performing the Order." FCA relies on the following definition of "subcontractor":

> The question of what constitutes one a subcontractor has been before this court many times, and there runs through all the cases the idea that a subcontractor is one undertaking the performance of the whole or a part of an existing contract under which another, with whom he contracts, is obligated to perform some specified work, and agrees, not only to do the work, but to do it in accordance with the pre-existing agreement of which he must, in the very nature of undertaking the performance of the undertaking of another, have knowledge of its terms and provisions. There must be brought into the subcontract, by reference at least, the agreement that the original contract shall be the standard by which the performance of the subcontract shall be judged. *People for use of Westover-Kamm Co v Valley Mantel & Tile Co*, [200 Mich 554, 555; 166 NW 839 (1918)]. To be a subcontractor one must become an under contractor, taking under the original contract and agreeing to perform in accordance therewith. *People for use of Towner Hardware Co v Morrison*, [228 Mich 216; 199 NW 689 (1924)]. [*People for Use of McDonell v Fidelity & Deposit Co of Maryland*, 232 Mich 238, 243-244; 205 NW 157 (1925).]

The trial court correctly analyzed and summarized the evidence regarding Adient's relationship to Faurecia. Adient performed its work on the seat structures pursuant to a direct contract with FCA and then merely supplied the structures to Faurecia, who completed the seats for FCA. Faurecia had no direct control over Adient, and had to go through FCA if there were changes that needed to be made to Adient's work. FCA worked directly with Adient independent of its contract with Faurecia to adopt the seat-structure design, and Faurecia's contract with FCA required it to incorporate the seat structure from Adient without making any unilateral changes. In sum, Adient supplied a component part to Faurecia, not pursuant to any contract with Faurecia, but pursuant to a contract with FCA, which Faurecia then used to complete the seat assembly.

---

[8] As noted, the trial court granted summary disposition to Faurecia with respect to *Lewis* on the basis of Faurecia being designated as a "responsible third party" in that lawsuit. However, we may affirm a lower court when it reaches the correct result for different reasons. See *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 345; 941 NW2d 685 (2019). And given our ruling, we need not address whether the trial court erred by granting summary disposition on the basis of Texas apportionment laws.

Faurecia had no direct contractual relationship with Adient with regard to specifications for the seat structure.

Accordingly, the trial court did not err by ruling that Adient was not a subcontractor of Faurecia, and thus, Faurecia could not be held liable under the indemnification clause provision making it liable for indemnification for an act, omission, or negligent work of a subcontractor.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra