# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES PROVENZINO,

        Plaintiff,

v

MACOMB COUNTY and MACOMB COUNTY
DEPARTMENT OF ROADS,

        Defendants,

and

FLORENCE CEMENT COMPANY,

        Defendant/Cross-plaintiff-
        Appellant,

and

LOIS KAY CONTRACTING COMPANY,

        Defendant/Cross-defendant-
        Appellee.

UNPUBLISHED
January 10, 2017

No. 328653
Macomb Circuit Court
LC No. 2013-002940-NO

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant/cross-appellant, Florence Cement Company (Florence), appeals as of right from a final order of no cause of action. Florence's appeal arises from the trial court's earlier order denying Florence's motion for summary disposition on its cross-complaint against Lois Kay Contracting Company (Lois Kay) and, instead, dismissing the cross-complaint. Because the plain language of the parties' subcontract agreement requires Lois Kay to indemnify Florence, we reverse.

## I. BASIC FACTS

Plaintiff sued Macomb County and the Macomb County Department of Roads (the County)[1], Florence, and Lois Kay, after he was injured in a motorcycle accident at a construction site. The County controlled a construction project on Harper Avenue from 13 Mile Road to 15 Mile Road in St. Clair Shores, which included asphalt resurfacing and concrete reconstruction. Florence was the general contractor and Lois Kay was the subcontractor responsible for milling the existing asphalt on Harper Avenue. At the time of plaintiff's accident, the southbound lanes of Harper Avenue were closed and northbound Harper was used for both north- and southbound traffic. Only one of the two southbound lanes had been milled, resulting in a difference of elevation. Near midnight on the night of his accident, plaintiff was heading home on his motorcycle, traveling southbound on Harper Avenue from 15 Mile. In order to travel southbound, plaintiff had to use one of the northbound lanes. Plaintiff saw friends in the parking lot of Colleen's Bar and decided he would stop in for a visit. Plaintiff, who was traveling at about 20 miles per hour, initially encountered a slight descent when he negotiated his turn. But he testified that there was a "four-inch rise" that he did not expect. Plaintiff did not have a chance to slow down and was injured when his bike lost control after coming in contact with the change in elevation.

Upon leave from the trial court, Florence filed a cross-complaint against Lois Kay on December 11, 2013. Florence alleged that Lois Kay was required to defend and indemnify Florence under ¶¶ 14 and 16 of the parties' subcontract agreement. Florence alleged that Lois Kay was in the process of milling the asphalt when plaintiff was injured and, because plaintiff's allegations surrounded Lois Kay's work, Lois Kay had a contractual obligation to defend and indemnify Florence. In its motion for summary disposition, Florence argued:

> In the present case, Plaintiff alleges that he was injured due to the disparity in height between a lane that had been milled by Lois Kay and an unmilled adjacent lane. Accordingly, there is no genuine issue of material fact with regard to whether Plaintiff's claimed injuries were "directly or indirectly caused or claimed to be caused by an action or negligence of" Lois Kay. (¶ 14.) Likewise, there is no genuine issue of material fact with regard to whether Plaintiff's alleged injuries were "sustained in connection with or by reason of the performance of the work of" Lois Kay. (¶ 16.) Thus, indemnification provisions apply to Plaintiff's claims against Florence, and Lois Kay is contractually obligated to defend and indemnify Florence against Plaintiff's claims. Therefore, Florence is entitled to summary disposition of its *Cross Complaint*.

Lois Kay responded that the indemnity and insurance provisions were inconsistent, contradictory and, therefore, ambiguous. Additionally, Lois Kay argued that the indemnification provision was not triggered because Lois Kay was only responsible for milling, which was grinding off the top surface of existing asphalt pavement in anticipation of placing a new asphalt surface. Milling did not extend to cleaning up, ramping, signage, barricades, lighting, or any

---

[1] The County was ultimately dismissed from the suit due to plaintiff's failure to provide a timely and proper notice of intent to sue.

other aspect of plaintiff's allegations of negligence. In support of its argument, Lois Kay pointed to the testimony of Heidi Flateau, the County's project engineer, who testified that "[m]illing companies are notorious for not being responsible for traffic control on projects." Lois Kay also relied on testimony of Florence's foreman, David Farrell, who admitted that Florence was responsible for cleaning up the asphalt and putting in any milling ramps, as well as maintaining the barricades. He further testified that it was not unusual to leave one lane milled and one lane unmilled during the construction process. Florence's project manager, Steve Gregor, testified that if a business was open, it was Florence's responsibility to maintain access to the business. Lois Kay argued that because plaintiff's negligence allegations revolved around signage, barricades, ramps, clean up and warnings in general, it followed that if plaintiff prevailed, it would be because of Florence's sole negligence and not because Lois Kay was negligent in milling the road surface. Lois Kay argued that MCL 691.991 applied and prohibited Florence from seeking indemnity for its sole negligence.

After taking the matter under advisement, the trial court denied Florence's motion for summary disposition on its cross-claim under MCR 2.116(C)(10) and, instead, ordered the cross-claim dismissed pursuant to MCR 2.116(I)(2). As a preliminary matter, the trial court rejected Lois Kay's contention that paragraphs 14 and 16 were ambiguous or inherently contradictory. However, the trial court accepted Lois Kay's argument that Florence could not seek indemnification for its sole liability. The trial court wrote:

> As noted, plaintiff's complaint alleges he was riding his motorcycle in the construction zone when he tried to turn into a parking lot with "unclearly marked signage/cones/barrels". He claims he encountered crushed roadway pieces from the milling process and four-inch height differential in roadway surfaces, causing him to fall and suffer severe injuries. Plaintiff similarly testified to the cause of the incident.
>
> Heidi Lynn Flateau, Macomb County Department of Roads' project engineer, testified defendant Lois Kay Contracting was not responsible for adjusting barricades and normally would not be responsible for constructing road transitions for business entrances. David Michael Farrell, a foreman for defendant Florence Cement, testified defendant Lois Kay Contracting was only responsible for milling the existing asphalt; he admitted defendant Florence Cement was responsible for cleaning up the milled asphalt and putting in any milling ramps. Farrell also stated the trucking company, not defendant Lois Kay contracting, would have left any loosed milled asphalt on the ground and that defendant Florence Cement would have cleaned it up. Steve Gregor, defendant Florence Cement's project manager, similarly testified defendant Florence Cement was responsible for putting in milling ramps.
>
> Consequently, there is no genuine issue of material fact but that defendant Lois Kay Contracting's actions and performance of work did not cause plaintiff's injuries; indeed, there is no evidence to suggest defendant Lois Kay Contracting was negligent. Defendant Florence Cement's own actions and work performance solely caused plaintiff's injuries.

Therefore, defendant Florence Cement is not entitled to indemnification from defendant Lois Kay Contracting. MCL 691.991 and *Sherman v DeMaria Building Co, Inc,* 203 Mich App 593, 600-601; 513 NW2d 187 (1994).

The matter proceeded to trial, where there were eight days of testimony from June 9 to June 19, 2015. The jury ultimately concluded that neither Florence nor Lois Kay was negligent.[2] On July 6, 2015, Florence filed a motion to reinstate the cross-complaint "in light of the jury verdict." Florence argued that the prior judge's finding that Florence's actions caused plaintiff's injuries was clearly contradicted by the jury verdict. The matter was set to be heard on August 3, 2015, but the trial court addressed it when the parties appeared at a July 14, 2015 hearing regarding the language of the trial court's final order. The trial court noted that "[i]t would be long past any motion for reconsideration. Why wouldn't it be a matter handled like any other matter, if a judgment is entered, you go to the Court of Appeals." The trial court entered a "no cause of action" judgment for Florence and Lois Kay on July 14, 2015. The trial court also entered an order denying Florence's motion to reinstate the order. Florence now appeals as of right.

## II. ANALYSIS

On appeal, Florence argues that the plain and unambiguous language of the subcontract requires Lois Kay to defend and indemnify Florence against plaintiff's claims. We agree.

Florence sought summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). In denying Florence's motion, the trial court treated the motion as brought under subrule (C)(10). "We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Under that rule, summary disposition is appropriate when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed material fact exists. The existence of a disputed fact must be established by substantively admissible evidence, although the evidence need not be in admissible form. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which

---

[2] The trial has no bearing on this appeal. Appellate review "is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

reasonable minds could differ. [*Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440–441; 814 NW2d 670 (2012) (internal citations omitted).]

"Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

Finding that Florence was not entitled to summary disposition, the trial court dismissed the cross-complaint pursuant to MCR 2.116(I)(2), which provides: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

This appeal involves a determination of whether the parties' subcontract requires Lois Kay to indemnify Florence. "Contract interpretation . . .presents a question of law, calling for review de novo." *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354, 356 (2010).

"A right to indemnification can arise from an express contract, in which one of the parties has clearly agreed to indemnify the other." *Hubbell, Roth & Clark, Inc v Jay Dee Contractors, Inc*, 249 Mich App 288, 291; 642 NW2d 700 (2001). "Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). Indemnity clauses may, if the parties so intend, provide coverage for the indemnitee's own negligent acts. *Sherman v DeMaria Building Co, Inc*, 203 Mich App 593, 596-597; 513 NW2d 187 (1994); *Fischbach-Natkin Co v Power Process Piping, Inc*, 157 Mich App 448, 452; 403 NW2d 569 (1987); *Paquin v Harnischfeger Corp*, 113 Mich App 43, 52-53; 317 NW2d 279 (1982). "The only legal restriction upon indemnity in the subcontractor context is the prohibition on indemnification against the 'sole negligence' of the contractor . . ." *Miller-Davis*, 495 Mich at 173. MCL 691.991(1) provides:

> In a contract for the design, construction, alteration, repair, or maintenance of a building, a structure, an appurtenance, an appliance, a highway, road, bridge, water line, sewer line, or other infrastructure, or any other improvement to real property, including moving, demolition, and excavating connected therewith, a provision purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable.

"An indemnity contract is construed in the same fashion as are contracts generally." *Hubbell,* 249 Mich App at 291. Our Supreme Court has set forth the following standard for reviewing indemnity clauses:

> As with any other contract, our primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered into the contract. We determine the parties' intent by examining the language of

the contract according to its plain and ordinary meaning. In doing so, we avoid an interpretation that would render any portion of the contract nugatory. We assess the threshold question whether a contract's indemnity clause applies to a set of facts by a "straightforward analysis of the facts and the contract terms."

Where parties have expressly contracted for indemnification, the extent of the duty must be determined from the language of the contract. [*Miller-Davis*, 495 Mich at 174 (internal footnotes and quotation marks omitted).]

We must, therefore, scrutinize the parties' subcontract agreement and the provisions pertaining to indemnification. The subcontract provided:

14. INDEMNIFICATION: Subcontractor agrees, and shall bind all sub-subcontractors to agree to indemnify Contractor, Owner and all other parties the Contractor is obligated to indemnify pursuant to the Prime Contract (hereinafter "Indemnities"), and to defend and hold Indemnities forever harmless from and against all suits, actions, legal and administrative proceedings, claims, demands, damages, interest, attorney fees, costs and expenses of whatsoever kind or nature whether arising before or after completion of Subcontractor's work and in any manner directly or indirectly caused or claimed to be caused by any action or negligence of Subcontractor of Sub-subcontractor, and regardless whether directly or indirectly caused or claimed to be caused in part by a party indemnified hereunder or by anyone acting under their direction, control or on their behalf, until such time as a judgement [sic] is entered against Contractor by a court of law. . . . This Section shall survive the expiration and/or termination of this Subcontract.

\*\*\*

16. INJURY OR DAMAGE TO PERSONS AND PROPERTY AND INSURANCE: Subcontractor shall be solely responsible for and shall hold Prime Contractor and Owner and their individual officers and agents free and harmless from any and all losses, expenses, damages, demands and claims arising out of or in connection with injuries (including death) or damages to any and all persons, employees, and/or property in any way sustain [sic] or alleged to have been sustained in connection with or by reason of the performance of the work by Subcontractor, its subcontractors, agents or employees. . . .

The provisions are unambiguous and broadly worded, requiring indemnification for "all suits, actions, legal and administrative proceedings, claims, demands, damages, interest, attorney fees, costs and expenses of whatsoever kind or nature . . . arising before or after completion of Subcontractor's work."

"Arise" is defined as "to result; spring or issue." Random House Webster's College Dictionary (1997).

\*\*\*

In interpreting an insurance contract containing the language "arising out of," we held that such language requires a causal connection that is more than incidental. Similarly, in interpreting a workers' compensation statute, MCL 418.301, containing the language "arising out of," we held that this language requires a causal connection. [*People v Johnson*, 474 Mich 96, 100–101; 712 NW2d 703 (2006).]

This Court has also noted that "[t]he term "arising out of" does not mean proximate cause in the strict legal sense" and that "almost any causal connection or relationship will do." *Shinabarger v Citizens Mut Ins Co*, 90 Mich App 307, 313–314; 282 NW2d 301 (1979). "The question to be answered is whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from'" the party's conduct. *Id.*

In order to determine whether plaintiff's injury arose from Lois Kay's conduct, the proper focus is on plaintiff's allegations. The complaint alleged that plaintiff "was confronted by unclearly marked signage/cones/barrels, etc., to indicate wherein the turn for the parking lot was, and turned wherein he believed the parking lot entrance to be." (¶ 9.) Plaintiff's "motorcycle encountered crushed roadway pieces remaining from the grinding process, *and a differential in height of approximately 4" of the roadway*, causing him to lose control of his motorcycle, throwing him onto the roadway which resulted in severe injuries to his left leg and knee which required hospitalization and surgical intervention." (¶ 10.) Plaintiff alleged that the County, Florence, and Lois Kay "owed certain duties to the general public, including [plaintiff] specifically, to maintain, repair, and/or monitor the roadway construction projects so as to keep it in reasonable repair and reasonably safe and convenient for public travel in order to avoid causing unnecessary injuries to motorists." (¶ 15.) Plaintiff specifically alleged that both Florence and Lois Kay were negligent in their "[f]ailure to maintain the cement resurfacing of the Harper Ave. construction project by allowing a dangerous and unsafe condition to exist, to wit: **an unreasonably dangerous differential in height of the roadway**, posted no warning to Plaintiff of the dangerous and unsafe condition and failed to provide barricades of said area via ropes, signs, etc." (¶ 19(a) and ¶ 22(a).)

Contrary to Lois Kay's assertions in the trial court and on appeal, the case was not just about signage, barriers, and warnings, which fell within Florence's scope of work. Rather, plaintiff's broad allegation that the combined defendants created an unreasonably dangerous condition included the height differential, which was the result of Lois Kay's work. The issue is not whether Lois Kay was *actually* negligent; the issue is whether plaintiff's allegations arose "in any way" from Lois Kay's work, thereby triggering the indemnification provisions. The broad language of the parties' agreement encompasses indemnification for Lois Kay's conduct because plaintiff's claims arose, in part, out of Lois Kay's work because indemnification applies "regardless whether" the condition is "claimed to be caused in part by a party indemnified" under the contract. Because plaintiff's lawsuit was based on Lois Kay's actions or inactions, the indemnification clause was triggered. The jury's ultimate verdict was, therefore, irrelevant.

Because the plain language of the subcontract required Lois Kay to indemnify Florence where plaintiff's claimed injuries were "directly or indirectly caused or claimed to be caused by any action or negligence of" Lois Kay and where plaintiff's alleged injuries were "sustained in connection with or by reason of the performance of" Lois Kay, the trial court erred in dismissing

Florence's cross-complaint against Lois Kay.  Given this conclusion, there is no need to address Florence's alternative arguments on appeal.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly